

21st Floor
1251 Avenue of the Americas
New York, NY 10020-1104

**Katherine M. Bolger**
(212) 402-4068 tel

katebolger@dwt.com

July 15, 2025

<u>**VIA ECF**</u>

Honorable Andrew L. Carter
United States District Court for the Southern District of New York
40 Foley Square, Room 435
New York, NY 10007

Re:     *Sherry-Lehmann, Inc. v. Stewart et al.*, Case No. 1:25-cv-4427

Dear Judge Carter:

We write on behalf of Defendant James Stewart, pursuant to Rule 2(A) of this Court's Individual Practices, to respectfully request a pre-motion conference to discuss Mr. Stewart's proposed motion to dismiss the complaint ("Compl.") for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

Plaintiff Sherry-Lehmann, Inc. accuses Mr. Stewart of "defam[ing] Sherry-Lehmann" by "publishing false statements about Sherry-Lehmann" in a May 25, 2023 New York Times article and then "restating many of the false allegations" in a second Times article, published June 16, 2023. Compl. at 18 & ¶¶ 120, 128. It further alleges that Mr. Stewart "conspired" in a "press smear campaign," "publish[ed] disparaging articles about Sherry-Lehmann in an attempt to advance false allegations to the public and to government authorities," and "damag[ed] Sherry-Lehmann's business reputation." *Id*. ¶¶ 158, 161, 169. Those allegations, of course, sound in defamation. But Sherry-Lehmann does not, and cannot, assert a defamation claim, because New York's one year statute of limitations for a defamation claim has run. CPLR 215(3); *see McKenzie v. Dow Jones & Co., Inc.*, 355 F. App'x 533, 535 (2d Cir. 2009). Instead, seeking an end-run around the statute of limitations for defamation actions, Sherry-Lehmann styles its claims against Mr. Stewart as RICO and RICO conspiracy claims. *See* 18 U.S.C. § 1962(c)-(d). Plaintiff's efforts, however, are unavailing and this Court should dismiss Plaintiff's complaint.

"It is well-settled in New York that a plaintiff cannot save an untimely defamation claim by fashioning the claim under some other rubric, thereby to avail himself of a longer limitations period." *McKenzie*, 355 F. App'x at 535. It is also "firmly established that defamation and many other similar allegations do not provide the requisite predicate for RICO violation." *Kimm v. Lee*, 2005 WL 89386, at *5 (S.D.N.Y. Jan. 13, 2005), *aff'd sub nom. Kimm v. Chang Hoon Lee & Champ, Inc.*, 196 F. App'x 14 (2d Cir. 2006); *see also, e.g.*, *Rajaratnam v. Motley Rice, LLC*, 449 F. Supp. 3d 45, 73-74 (E.D.N.Y. 2020) ("Plaintiff's attempt to spin an alleged scheme to harm a plaintiff's reputation into a RICO claim fails, and federal courts routinely and soundly reject such attempts.") (cleaned up). Finally, RICO claims are "barred by the First Amendment" where the complaint "fails to adequately allege that the speech at issue is integral to the

**DWT.COM**

Anchorage | Bellevue | Los Angeles | New York
Portland | San Francisco | Seattle | Washington, D.C.
4903-6674-2355v.5 0034735-000146

Honorable Andrew L. Carter
July 15, 2025
Page 2

commission of any crime." *Hollander v. Pressreader, Inc.*, 2020 WL 2836189, at \*3-4 (S.D.N.Y. May 30, 2020); *see also Hollander v. CBS News Inc.*, 2017 WL 1957485, at \*1 (S.D.N.Y. May 10, 2017) ("[T]he news reporting that [the plaintiff] assails as wire fraud is speech protected by the First Amendment of the United States Constitution for which civil damages to an offended audience are not available."), *vacated on other grounds*, 710 F. App'x 35 (2d Cir. 2018). For these reasons alone, Plaintiff's civil RICO and conspiracy claims are barred.

Even if the First Amendment did not bar Sherry-Lehmann's claims, the complaint falls far short of stating a RICO or RICO conspiracy claim. Plaintiff, in essence, accuses Mr. Stewart simply of engaging in journalism—being a reporter for whom two of his co-defendants served as named sources in a widely published article. As set forth in the complaint, Mr. Stewart experienced delays in the delivery of wines he ordered, *see* Compl. ¶¶ 96, 125, learned that others also had not received wine they had purchased, *see id.* ¶¶ 71, 206, and was aware of news reports that Sherry-Lehmann was "facing potential financial ruin," *id.* ¶¶ 71, 76, 84. He then began to investigate by speaking to sources, including not only customers, delivery drivers, and employees of Sherry-Lehmann, but also former Sherry-Lehmann owners Michael Aaron, Chris Adams, and Michael Yurch and former director Peter Ambrosino, as well as Shyda Gilmer and Kris Green (the current co-owners) and other Sherry-Lehmann representatives, with whom he allegedly "exchanged hundreds of fact-checking emails, texts, and phone calls" before publishing his first article. *Id.* ¶¶ 2, 7, 12, 99, 102, 106, 109, 114, 127. The complaint does not allege he obtained money or property or anything else of value other than a story of significant public interest.

These allegations do not amount to a plausible RICO or RICO conspiracy claim involving Mr. Stewart. To state a RICO claim, a plaintiff must plausibly allege that it "was injured by defendants' 1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Kalimantano GmbH v. Motion in Time, Inc.*, 939 F. Supp. 2d 392, 404 (S.D.N.Y. 2013). As to the specific racketeering activity alleged here, *see* Compl. ¶¶ 139, 162, 169, wire or mail fraud requires "(i) a scheme to defraud (ii) to get money or property, (iii) furthered by the use of interstate mail or wires," *BWP Media USA Inc. v. Hollywood Fan Sites, LLC*, 69 F. Supp. 3d 342, 362 (S.D.N.Y. 2014), and must be pled with particularity under Rule 9(b), *see, e.g.*, *McLaughlin v. Anderson*, 962 F.2d 187, 191 (2d Cir. 1992); *Flexborrow LLC v. TD Auto Fin. LLC*, 255 F. Supp. 3d 406, 420 (E.D.N.Y. 2017), while the Hobbs Act requires a showing of "robbery or extortion," 18 U.S.C. § 1951(a). A RICO conspiracy claim requires an intent to further a substantive RICO offense, *see, e.g.*, *Salinas v. United States*, 522 U.S. 52, 65 (1997), and must be dismissed when it relies on the same factual predicate as a substantive RICO claim that also fails, *see, e.g.*, *Zamora v. FIT Int'l Grp. Corp.*, 834 F. App'x 622, 626 (2d Cir. 2020).

Here, Plaintiff does not plausibly allege these elements.

***First***, the complaint fails to plausibly allege racketeering activity. Sherry-Lehmann does not plead that Mr. Stewart called customers or published his articles to "get money or property" or that Sherry-Lehmann was "induced to part with anything of value as a result." *Kimm*, 2005 WL 89386, at \*4. To the contrary, it alleges that Mr. Stewart declined Sherry-Lehmann's offer to

Honorable Andrew L. Carter
July 15, 2025
Page 3

deliver his wines because he didn't want "special favors." Compl. ¶ 96. In addition, the complaint does not plead with particularity a claim for interstate mail or wire fraud, because, at the most basic level, it does not plead where Mr. Stewart or the clients were when he allegedly "called Wine Caves' and Sherry-Lehmann's top clients . . . and made misrepresentations." *Id.* ¶ 161; *see, e.g.*, *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 243-44 (2d Cir. 1999) (no wire fraud where phone calls were between individuals in New York).

*Second*, Sherry-Lehmann fails to plausibly allege the existence of a RICO enterprise or that Mr. Stewart was part of one. An enterprise requires "an ongoing organization" and "evidence that the various associates function as a continuing unit," and "must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Zamora*, 834 F. App'x at 625 (citations omitted). Notably, "the individuals must share a common purpose to engage in a particular fraudulent course of conduct and *work together* to achieve such purposes." *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 120 (2d Cir. 2013) (citation omitted) (emphasis added). Here, the complaint actually undercuts any inference that Mr. Stewart and the other defendants were working together. It alleges that Mr. Aaron, Mr. Adams, and Mr. Yurch "act[ed] out of concern that they would be liable for the overdue rent payments under the Lease as personal guarantors," seeking "to force Sherry-Lehmann into closing operations and surrendering the premises as soon as possible in order to trigger the earliest possible end date for guarantor liability." Compl. ¶¶ 68-69; *see also, e.g.*, *id.* ¶ 16. By contrast, the complaint alleges (albeit inaccurately) that Mr. Stewart's purpose was "to create popular clickbait stories" and chase a Pulitzer Prize. *Id.* ¶ 16. There, is, therefore, no alleged common purpose.

*Third*, Sherry-Lehmann fails to plead with particularity that any injury was proximately caused by Mr. Stewart or the other so-called RICO Defendants. *See, e.g.*, *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763 (2d Cir. 1994). In this case, not only are Sherry-Lehmann's financial difficulties alleged to have begun long before Mr. Stewart began making calls and published his articles, *see* Compl. ¶¶ 13, 47, 54, 71, 76, 84, but the "government raids" and the loss of a potential business deal that Sherry-Lehmann allegedly suffered, *id.* ¶ 186, were caused by "intervening" "factors other than" Mr. Stewart's allegedly "predicate acts." *Kerik v. Tacopina*, 64 F. Supp. 3d 542, 557 (S.D.N.Y. 2014) (citing *First Nationwide*, 27 F.3d at 769); *see generally id.* at 556 (link between "injury asserted" and "injurious conduct alleged" cannot be "too remote, purely contingent, or indirect") (citation omitted).

Plaintiffs "wielding RICO almost always miss the mark." *Gruber v. Gilbertson*, 2019 WL 4458956, at *5 (S.D.N.Y. Sept. 17, 2019) (citations omitted). This case is no exception. Mr. Stewart respectfully requests a premotion conference on his motion to dismiss.

Thank you for your consideration.

Respectfully submitted,

*/s/ Katherine M. Bolger*