UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

SHERRY-LEHMANN, INC. d/b/a
SHERRY-LEHMANN WINE AND SPIRITS,

*Plaintiff*,

- against -

JAMES STEWART, MICHAEL AARON,
CHRIS ADAMS, and MICHAEL YURCH,

*Defendants*.

Case No. 1:25-cv-4427

**MEMORANDUM OF LAW IN SUPPORT OF**
**<u>DEFENDANT JAMES STEWART'S MOTION TO DISMISS</u>**

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL BACKGROUND .................................................................................................. 2

   A.   The Parties ................................................................................................................ 2

   B.   Sherry-Lehmann's Widely Reported Financial Distress ........................................ 3

   C.   Mr. Stewart's Reporting on Sherry-Lehmann ........................................................ 5

   D.   The Raid On Sherry-Lehmann's Facilities .............................................................. 6

   E.   The Amended Complaint .......................................................................................... 6

ARGUMENT ......................................................................................................................... 7

I.      PLAINTIFF'S CLAIMS AGAINST MR. STEWART ARE TIME-BARRED ................ 8

II.     PLAINTIFF'S CLAIMS ARE BARRED BY THE FIRST AMENDMENT ................. 10

III.    PLAINTIFF FAILS TO PLAUSIBLY ALLEGE A RICO VIOLATION ...................... 11

   A.   Plaintiff Fails To Plead A RICO Enterprise ........................................................ 12

   B.   Plaintiff Fails To Plead "A Pattern Of Racketeering Activity" ........................... 14

      1.   Plaintiff Fails To Plead Wire Or Mail Fraud ............................................... 15

      2.   Plaintiff Fails To Plead A Hobbs Act Violation .......................................... 16

   C.   Plaintiff Fails To Plead Mr. Stewart Proximately Caused Any Injury ............... 18

IV.   PLAINTIFF FAILS TO PLAUSIBLY ALLEGE A RICO CONSPIRACY ................... 21

V.    MR. STEWART SHOULD BE AWARDED ATTORNEYS' FEES AND COSTS ....... 22

CONCLUSION .................................................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anatian v. Coutts Bank (Switzerland) Ltd.*,
   193 F.3d 85 (2d Cir. 1999)................................................................................................15

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).........................................................................................................7

*Bartnicki v. Vopper*,
   532 U.S. 514 (2001).......................................................................................................10

*Beck v. Prupis*,
   529 U.S. 494 (2000).......................................................................................................22

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).........................................................................................................7

*Black v. Ganieva*,
   619 F. Supp. 3d 309 (S.D.N.Y. 2022),
   *aff'd*, 2023 WL 2317173 (2d Cir. Mar. 2, 2023) .......................................................13, 16, 21

*Bobulinski v. Tarlov*,
   758 F. Supp. 3d 166 (S.D.N.Y. 2024)..........................................................................22, 23

*Butcher v. Wendt*,
   975 F.3d 236 (2d Cir. 2020)............................................................................................21

*Button v. Breshears*,
   2025 WL 2771663 (S.D.N.Y. Sept. 26, 2025)...................................................................8

*Button v. N.Y. Times Co.*,
   2025 WL 2643674 (S.D.N.Y. Sept. 15, 2025)...........................................................8, 22, 23

*BWP Media USA Inc. v. Hollywood Fan Sites, LLC*,
   69 F. Supp. 3d 342 (S.D.N.Y. 2014).......................................................................12, 14, 15

*Cintas Corp. v. United Here*,
   601 F. Supp. 2d 571 (S.D.N.Y. 2009), *aff'd*, 355 F. App'x 508 (2d Cir. 2009)....................18

*City of New York v. Chavez*,
   2012 WL 1022283 (S.D.N.Y. Mar. 26, 2012) ..............................................................21, 22

*Com. Cleaning Servs., L.L.C. v. Colin Serv. Sys., Inc.*,
   271 F.3d 374 (2d Cir. 2001)............................................................................................12

i

*Cruz v. FXDirectDealer, LLC*,
   720 F.3d 115 (2d Cir. 2013) ................................................................................12

*D. Penguin Bros. Ltd. v. City Nat'l Bank*,
   587 F. App'x 663 (2d Cir. 2014) ..........................................................................13

*DiFolco v. MSNBC Cable L.L.C.*,
   622 F.3d 104 (2d Cir. 2010) ...................................................................................4

*Document Techs., Inc. v. LDiscovery, LLC*,
   731 F. App'x 31 (2d Cir. 2018) ...........................................................................23

*Doe v. Trump Corp.*,
   385 F. Supp. 3d 265 (S.D.N.Y. 2019) .................................................................19

*Entretelas Americanas S.A. v. Soler*,
   2020 WL 9815186 (S.D.N.Y. Feb. 3, 2020) .........................................................19

*First Nationwide Bank v. Gelt Funding Corp.*,
   27 F.3d 763 (2d Cir. 1994) .............................................................................18, 19

*Flexborrow LLC v. TD Auto Fin. LLC*,
   255 F. Supp. 3d 406 (E.D.N.Y. 2017) .................................................................12

*Frangipani v. HBO*,
   2010 WL 1253609 (S.D.N.Y. Mar. 16, 2010) ......................................................13

*Glob. Supplies NY, Inc. v. Electrolux Home Prods., Inc.*,
   2022 WL 815795 (2d Cir. Mar. 18, 2022) .............................................................8

*Goldman v. Barrett*,
   733 F. App'x 568, 570 (2d Cir. 2018) ...................................................................8

*Gruber v. Gilbertson*,
   2019 WL 4458956 (S.D.N.Y. Sept. 17, 2019) .......................................................1

*Hecht v. Com. Clearing House, Inc.*,
   897 F.2d 21 (2d Cir. 1990) ...................................................................................22

*Heilbut v. Cassava Sciences, Inc.*,
   778 F. Supp. 3d 551 .............................................................................................22

*Hengjun Chao v. Mount Sinai Hosp.*,
   476 F. App'x 892 (2d Cir. 2012) ...........................................................................8

*Hollander v. CBS News Inc.*,
   2017 WL 1957485 (S.D.N.Y. May 10, 2017),
   *vacated on other grounds*, 710 F. App'x 35 (2d Cir. 2018) ................................11

*Hollander v. Pressreader, Inc.*,
   2020 WL 2836189 (S.D.N.Y. May 30, 2020) .............................................................10, 11, 15

*Ibrahim v. Pena*,
   2017 WL 3601246 (S.D.N.Y. Aug. 21, 2017) ....................................................................7

*Jain v. Sec. Indus. & Fin. Mkts. Ass'n*,
   2009 WL 3166684 (S.D.N.Y. Sept. 28, 2009)....................................................................8

*Kalimantano GmbH v. Motion in Time, Inc.*,
   939 F. Supp. 2d 392 (S.D.N.Y. 2013)...............................................................................11

*Katzman v. Victoria's Secret Catalogue*,
   167 F.R.D. 649 (S.D.N.Y. 1996) .......................................................................................7

*Kelly v. United States*,
   590 U.S. 391 (2020)..........................................................................................................16

*Kimm v. Chang Hoon Lee & Champ, Inc.*,
   196 F. App'x 14 (2d Cir. 2006) ..................................................................................16, 18

*Kimm v. Lee*,
   2005 WL 89386 (S.D.N.Y. Jan. 13, 2005), *aff'd sub nom.*, *Kimm v. Chang Hoon Lee & Champ, Inc.*, 196 F. App'x 14 (2d Cir. 2006)...............................................................15, 16

*Kolinka-Loehr v. Cnty. of Tompkins*,
   2041 (3d Dep't 2020)..........................................................................................................8

*Kriss v. Bayrock Group LLC*,
   2017 WL 1901966 (S.D.N.Y. May 8, 2017) ....................................................................21

*Lesesne v. Brimecome*,
   918 F. Supp. 2d 221 (S.D.N.Y. 2013)................................................................................8

*Malester v. Adamo*,
   2010 WL 5065865 (S.D.N.Y. Dec. 8, 2010) ...................................................................12

*Mangiafico v. Blumenthal*,
   471 F.3d 391 (2d Cir. 2006)...............................................................................................3

*McKenzie v. Dow Jones & Co.*,
   355 F. App'x 533 (2d Cir. 2009) .......................................................................................8

*McLaughlin v. Anderson*,
   962 F.2d 187 (2d Cir. 1992)........................................................................................12, 15

*MinedMap, Inc. v. Northway Mining, LLC*,
   2022 WL 570082 (2d Cir. Feb. 25, 2022)........................................................................14

*Morrison v. Nat'l Broad. Co.*,
    19 N.Y.2d 453 (1967) ...................................................................................10

*Moss v. BMO Harris Bank, N.A.*,
    258 F. Supp. 3d 289 (E.D.N.Y. 2017) ..........................................................14

*Nygard v. Bacon*,
    2021 WL 4926078 (S.D.N.Y. Oct. 21, 2021) ................................................20

*Page v. Oath Inc.*,
    2018 WL 1406621 (S.D.N.Y. Mar. 20, 2018) ...............................................11

*Petroff Amshen LLP v. Alfa Rehab PT PC*,
    2021 WL 960394 (E.D.N.Y. Mar. 15, 2021) .................................................18

*Rajaratnam v. Motley Rice, LLC*,
    449 F. Supp. 3d 45 (E.D.N.Y. 2020) ............................................................15

*Red Ball Interior Demolition Corp. v. Palmadessa*,
    874 F. Supp. 576 (S.D.N.Y. 1995) ................................................................19

*Reed Constr. Data Inc. v. McGraw-Hill Cos.*,
    745 F. Supp. 2d 343 (S.D.N.Y. 2010)............................................................12

*Reich v. Lopez*,
    858 F.3d 55 (2d Cir. 2017)............................................................................15

*Santana v. Adler*,
    2018 WL 2172699 (S.D.N.Y. Mar. 26, 2018), *report & recommendation adopted*,
    2018 WL 2170299 (S.D.N.Y. May 10, 2018) ................................................16

*Scheidler v. Nat'l Org. for Women, Inc.*,
    547 U.S. 9 (2006)..........................................................................................17

*Segal v. Sherry-Lehmann, Inc.*,
    Index No. 654897/2022, Dkt. No. 2 (N.Y. Sup. Ct. Dec. 19, 2022).........................3

*Sekhar v. United States*,
    570 U.S. 729 (2013)......................................................................................17

*Snyder v. Phelps*,
    562 U.S. 443 (2011)................................................................................10, 11

*Spiteri v. Russo*,
    2013 WL 4806960 (E.D.N.Y. Sept. 7, 2013), *aff'd*, 622 F. App'x 9 (2d Cir. 2015)................7

*Tsipouras v. W&M Props., Inc.*,
    9 F. Supp. 2d 365 (S.D.N.Y. 1998) ...............................................................18

*United States v. Burke,*
    700 F.2d 70 (2d Cir. 1983) .................................................................................11

*United States v. Chastain,*
    145 F.4th 282 (2d Cir. 2025) ............................................................................16

*United States v. Kirsch,*
    903 F.3d 213 (2d Cir. 2018) .............................................................................17

*Westchester Cnty. Indep. Party v. Astorino,*
    137 F. Supp. 3d 586 (S.D.N.Y. 2015) .............................................................18

*Zamora v. Fit Int'l Grp. Corp.,*
    834 F. App'x 622 (2d Cir. 2020) .................................................................12, 21

**Statutes**

18 U.S.C.
    § 1343 ................................................................................................................16
    § 1951 ..........................................................................................................12, 17
    § 1961 ............................................................................................................1, 12
    § 1962 ......................................................................................................7, 11, 21

N.Y. Civ. Rights L. § 70-a ...............................................................................1, 22

N.Y. Civ. Rights L. § 76-a ...................................................................................22

**Rules**

Fed. R. Civ. P. 9(b) ........................................................................................12, 15

Fed. R. Civ. P. 12(b)(6) ..................................................................................1, 4, 7

N.Y. C.P.L.R. § 215(3) .........................................................................................8

**Other Authorities**

Matthew L. Schafer & Tanvi Valsangikar, *The Application of the New York Anti-SLAPP Scheme
    in Federal Court,* 2 J. Free Speech L. 573 (2023) ...........................................22

Defendant James Stewart moves to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), the claims against him in the Amended Complaint ("Am. Compl."), ECF No. 37, brought by Plaintiff Sherry-Lehmann, Inc. ("Sherry-Lehmann"), and for an award of fees and costs pursuant to New York Civil Rights Law Section 70-a.

## PRELIMINARY STATEMENT

Plaintiffs "wielding RICO almost always miss the mark." *Gruber v. Gilbertson*, 2019 WL 4458956, at *5 (S.D.N.Y. Sept. 17, 2019) (internal quotation marks and citations omitted). This case is no exception.

A once-storied wine and spirits store, Sherry-Lehmann hit financial headwinds and, by 2020, had accrued millions of dollars in tax liability, rent arrears, and other debts. After the *New York Post* and *Wine Spectator* reported on Sherry-Lehmann's financial distress, and after the store had already closed, journalist James Stewart published two articles in *The New York Times* in May and June 2023. His May 2023 article reported that Sherry-Lehmann owed millions of dollars in unpaid sales taxes and had allegedly failed to deliver wine to some customers who paid in advance. His June 2023 article reported that the Justice Department was conducting a criminal investigation into Sherry-Lehmann, which reportedly had paid its back rent but still owed millions of dollars in unpaid sales taxes. Sherry-Lehmann never brought a defamation lawsuit against Mr. Stewart or *The Times*—or any of the other publications reporting on its financial difficulties.

Now, more than two years after Mr. Stewart's first article was published, Sherry-Lehmann is seeking to punish Mr. Stewart for his reporting, by attempting to recast Mr. Stewart's routine journalistic activities—interviewing and communicating with a number of sources, including former Sherry-Lehmann CEO and Chairman Michael Aaron and, allegedly, former Sherry-Lehmann President Michael Yurch—as participation in a RICO enterprise to harm Sherry-Lehmann's reputation. But newsgathering and reporting are not punishable as RICO or RICO

1

conspiracy offenses, and Plaintiff's claims fail for several independent reasons.

Initially, Plaintiff's claims against Mr. Stewart are time-barred because they are thinly-disguised defamation claims. Plaintiff's claims, which seek to punish newsgathering and news reporting, are also barred by the First Amendment.

But even if they were not, Plaintiff has utterly failed to plausibly allege the elements of his claims. The Amended Complaint fails to plausibly allege the elements of a RICO violation, including the existence of a RICO enterprise in which Mr. Stewart participated and a pattern of racketeering activity. Indeed, the Amended Complaint *concedes* that Mr. Stewart did not obtain money or property, as required to support a predicate act of either wire or mail fraud or a Hobbs Act violation. The Amended Complaint fails to plausibly allege a RICO conspiracy. Finally, the Amended Complaint fails to plead any cognizable injury, much less one proximately caused by Mr. Stewart's conduct. For all these reasons, this Court should dismiss Plaintiff's frivolous RICO claims against Mr. Stewart with prejudice and award Mr. Stewart attorneys' fees and costs under the New York anti-SLAPP law.

## **FACTUAL BACKGROUND[1]**

### A.    **The Parties**

Plaintiff Sherry-Lehmann is a New York wine and spirits company that used to operate a retail wine store on Park Avenue, which has now closed. Am. Compl. ¶¶ 18, 32.

Defendant Michael Aaron, a Florida resident, is the son and nephew of the Sherry-Lehmann co-founders and served as Chairman and CEO of Sherry-Lehmann from 1989 to 2009. *Id.* ¶¶ 12, 28, 34. Defendant Chris Adams, a New York resident, joined Sherry-Lehmann in 1997, becoming a manager in 2002, a partner in 2005, and eventually CEO from 2009 to 2020. *Id.* ¶¶ 12,

---

[1] The allegations in this Amended Complaint are taken as true solely for purposes of this Motion to Dismiss.

29, 44, 46. Defendant Michael Yurch, a Florida resident, previously served as President of Sherry-Lehmann from 1996 to 2013. *Id.* ¶¶ 12, 30, 42. Defendant James Stewart, a New York resident, is a "highly regarded business writer" at *The New York Times*. *Id.* ¶¶ 2, 19, 31.

### B.    Sherry-Lehmann's Widely Reported Financial Distress

Founded in 1934, Sherry-Lehmann was, for decades, a premiere wine and spirits store in New York City, with a "flagship retail store" at 505 Park Avenue. Am. Compl. ¶¶ 32, 35. At some point, Sherry-Lehmann began selling Bordeaux futures—i.e., selling wines to customers before they are bottled and released. *See, e.g.*, *id.* ¶¶ 45, 71. Sherry-Lehmann's sister entity, Wine Caves, Inc. ("Wine Caves"), operated a wine storage business based in Pearl River, New York. *Id.* ¶ 18.

In recent years, Sherry-Lehmann suffered financial difficulties, and not only "was consistently in the red" from 2009 to 2020 but was "losing millions of dollars from the years 2016 through 2020." *Id.* ¶ 47. By approximately February 2020, "Sherry-Lehmann began defaulting under its payment obligations under the Lease." *Id.* ¶ 50. By September 2020, Sherry-Lehmann had accumulated approximately $3.2 million in outstanding New York sales tax liability, $650,000 in outstanding FedEx bills, and $729,673.32 in rent arrears. *Id.* ¶ 54. By 2022, Sherry-Lehmann was unable to satisfy wine futures orders, prompting two customers to file suit. *Id.* ¶ 71.[2]

Sherry-Lehmann's financial distress was a matter of public record long before *The Times* published the stories at issue here. On December 7, 2022, the *New York Post* published a lengthy article explaining that Sherry-Lehmann was "in danger of closing its doors" and ranked "ninth on the [New York] Department of Taxation and Finance's list of the top 250 delinquent business

---

[2] That is not the only lawsuit against Sherry-Lehmann for failure to deliver wines. On December 19, 2022, another customer, who allegedly paid in advance for $184,452 of wine that he did not receive, filed suit. *See Segal v. Sherry-Lehmann, Inc.*, Index No. 654897/2022, Dkt. No. 2 (N.Y. Sup. Ct. Dec. 19, 2022). This Court may take judicial notice of filings on public court dockets. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006).

taxpayers." Decl. of Katherine Bolger ("Bolger Decl."), Ex. A (Dec. 7, 2022 New York Post Article); *see* Am. Compl. ¶ 71.[3] The following week, on December 15, 2022, the *Post* published a follow-up article, reiterating that Sherry-Lehmann was "in danger of closing its doors as it has racked up a $3.1 million sales tax bill to New York state," as well as "arrears with suppliers and clients alike," and that "angry customers claim that they're not getting the deliveries they paid for." Am. Compl. ¶ 76; Bolger Decl. Ex. B (Dec. 15, 2022 New York Post Article). Sherry-Lehmann never brought defamation claims over those articles.

On January 5, 2023, *Wine Spectator* published an article reporting that "Sherry-Lehmann is facing potential financial ruin." *Id.* ¶ 84; *see* Bolger Decl. Ex. C (Jan. 5, 2023 Wine Spectator article). That was followed by a second article, on March 17, 2023, reporting on the closure of Sherry-Lehmann. Am. Compl. ¶ 86; *see* Bolger Decl. Ex. D (March 17, 2023 Wine Spectator article). The March 2023 article stated that "the 89-year-old retailer . . . has been grappling with unpaid bills, unpaid taxes, inventory issues and lawsuits from angry customers," and that "[t]he closure was only the latest of a cascade of troubles that have beset the store," including "tax issues," "inventory problems because suppliers say it has not been paying its bills," and the departure of "[s]everal key employees," who were "unhappy over bounced paychecks or business practices they could not countenance." *Id.* On June 13, 2023, Wine Spectator published a third article, reporting that Sherry-Lehmann had accrued $3.6 million in rent arrears its landlord was threatening eviction. Am. Compl. ¶ 88; *see* Bolger Decl. Ex. E (June 13, 2023 Wine Spectator Article).

---

[3] "In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

C.    **Mr. Stewart's Reporting on Sherry-Lehmann**

Around this time, Mr. Stewart also began reporting on Sherry-Lehmann's financial issues. He contacted Plaintiff's co-CEO, Shyda Gilmer, to explain that he intended to write about Sherry-Lehmann, Am. Compl. ¶ 92, and then met with Mr. Gilmer and another Sherry-Lehmann representative to ask them questions and hear their perspective. *Id.* ¶ 93. During that April 18, 2023 meeting, Mr. Stewart and Mr. Gilmer discussed the fact that Mr. Stewart had purchased wine through Sherry-Lehmann that had not yet been delivered. *Id.* ¶ 96. When Mr. Gilmer offered to have the wine delivered, Mr. Stewart said "Don't deliver it, don't do me any special favors," *id.*, making clear that he did not want to be "bribed" to write a favorable article or otherwise treated differently than other customers. Mr. Stewart followed up after the meeting with a list of questions to Sherry-Lehmann and its representatives. *Id.* ¶ 99. Mr. Stewart also contacted a large number of other sources to build as full a picture as possible of the facts. Between April 2023 and July 2023, Mr. Stewart allegedly "contacted Wine Caves customers claiming that his wine had been stolen from storage, and that other Wine Caves customer wines had been stolen as well." *Id.* ¶ 105. In addition to Sherry-Lehmann representatives and customers, he also spoke to suppliers, former Sherry-Lehmann employees—and even a Sherry-Lehmann delivery person. *Id.* ¶¶ 105, 110.

On May 25, 2023, *The New York Times* published an article by Mr. Stewart, quoting Mr. Gilmer, Mr. Adams, Mr. Aaron, as well as a number of other sources. *Id.* ¶¶ 113–116; *see* Bolger Decl. Ex. F. The article reported that, "according to a person who reviewed the company's financial statements," Sherry-Lehmann's "[a]nnual revenue plunged by more than half to $15 million in 2020," though the company "disputed those figures without providing what [it] said were accurate numbers." Am. Compl. ¶ 114. In the article, Mr. Stewart discussed at length that he was himself a customer whose wine had not been delivered, permitting readers to assess for

themselves his credibility. *See* Bolger Decl. Ex. F. On June 16, 2023, Mr. Stewart published a follow-up article titled "Famed Wine Store Sherry-Lehmann Faces Criminal Investigation." Am. Compl. ¶ 127; *see* Bolger Decl. Ex. G. The article reported that the Justice Department had convened a federal grand jury after customers complained of missing wine and was conducting an investigation in collaboration with the Postal Service and the New York Police Department. *Id.*

Other outlets, too, covered the collapse of Sherry-Lehmann, including Fortune, Bloomberg, Town and Country, Yahoo, AOL, the Daily Mail UK, and Wine Business. Am. Compl. ¶ 17.

### D.    The Raid On Sherry-Lehmann's Facilities

In July 2023, consistent with Mr. Stewart's reporting on the criminal investigation, the U.S. Attorney's Office directed Postal Inspectors to raid both Sherry Lehmann's retail location and the Wine Caves facility. Am. Compl. ¶ 18. The raid lasted multiple days, with as many as 200 agents at Wine Caves. *Id.* ¶¶ 129–130. It was followed by "a subsequent raid in May 2024." *Id.* ¶ 130.

Those raids were widely reported by news outlets *other* than *The Times*, *see, e.g.*, *id.* ¶¶ 131–132; Bolger Decl. Ex. H (July 24, 2023 New York Post article), and Mr. Stewart did not write any further articles on Sherry-Lehmann. Allegedly "as a result of the July 2023 raid and the published articles" across the various outlets, customers cancelled orders and "multiple third parties . . . backed out of acquisition discussions," including "one of the largest vineyard owners in France," which had allegedly been considering acquiring the company. Am. Compl. ¶¶ 8, 20, 136.

### E.    The Amended Complaint

Plaintiff filed its original complaint in this action on May 27, 2025. *See* ECF No. 1. After Mr. Stewart, Mr. Aaron, and Mr. Yurch filed letters seeking leave to file motions to dismiss, Plaintiff filed its Amended Complaint on October 16, 2025. *See* ECF No. 37. The Amended

Complaint asserts 4 claims: (1) a RICO claim under 18 U.S.C. § 1962(c) against Mr. Stewart, Mr. Aaron, and Mr. Yurch (together, the "RICO Defendants"); (2) a RICO conspiracy claim under 18 U.S.C. § 1962(d) against the RICO Defendants; (3) a breach of contract claim against Mr. Aaron, Mr. Adams, and Mr. Yurch; and (4) a breach of fiduciary duty claim against Mr. Adams. Plaintiff demands treble damages, compensatory damages, punitive damages, costs and fees, and interest.

## ARGUMENT

Plaintiff's Amended Complaint is an untimely defamation claim disguised as a RICO claim. It is barred by both the statute of limitations and the First Amendment. In addition, Plaintiff does not even come close to plausibly alleging that Mr. Stewart committed a substantive RICO violation or participated in a RICO conspiracy. The Amended Complaint must be dismissed with prejudice.

To survive dismissal under Rule 12(b)(6), "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Ibrahim v. Pena*, 2017 WL 3601246, at *1 (S.D.N.Y. Aug. 21, 2017). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

Courts scrutinize civil RICO claims especially carefully "given RICOs damaging effects on the reputations of individuals alleged to be engaged in RICO enterprises and conspiracies." *Spiteri v. Russo*, 2013 WL 4806960, at *45 (E.D.N.Y. Sept. 7, 2013), *aff'd*, 622 F. App'x 9 (2d Cir. 2015). Accordingly, "courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 655 (S.D.N.Y. 1996) (citation omitted).

## I.    PLAINTIFF'S CLAIMS AGAINST MR. STEWART ARE TIME-BARRED

Plaintiff's claims against Mr. Stewart, styled as RICO and RICO conspiracy claims, are, in reality, time-barred defamation claims. "In determining which statute of limitations is applicable to a cause of action, it is the essence of the action and not its mere name that controls." *Button v. Breshears*, 2025 WL 2771663, at *9 (S.D.N.Y. Sept. 26, 2025) (quoting *Kolinka-Loehr v. Cnty. of Tompkins*, 189 A.D.2d 2039, 2041 (3d Dep't 2020)); *see Lesesne v. Brimecome*, 918 F. Supp. 2d 221, 224 (S.D.N.Y. 2013) ("courts in New York" must keep "a watchful eye for claims sounding in defamation that have been disguised as other causes of action").

"Claims based on harm 'stemming from injury to reputation' sound in defamation." *Button v. N.Y. Times Co.*, 2025 WL 2643674, at &7 (S.D.N.Y. Sept. 15, 2025) (quoting *Goldman v. Barrett*, 733 F. App'x 568, 570 (2d Cir. 2018) (summary order)). A claim is thus properly considered a defamation claim "where the entire injury complained of by plaintiff flows from the effect on his reputation." *Hengjun Chao v. Mount Sinai Hosp.*, 476 F. App'x 892, 895 (2d Cir. 2012) (quoting *Jain v. Sec. Indus. & Fin. Mkts. Ass'n*, 2009 WL 3166684, at *9 (S.D.N.Y. Sept. 28, 2009)); *accord, e.g.*, *Glob. Supplies NY, Inc. v. Electrolux Home Prods., Inc.*, 2022 WL 815795, at *2 (2d Cir. Mar. 18, 2022) (summary order); *Goldman*, 733 F. App'x at 570. "It is well-settled in New York that a plaintiff cannot save an untimely defamation claim by fashioning the claim under some other rubric, thereby to avail himself of a longer limitations period." *McKenzie v. Dow Jones & Co.*, 355 F. App'x 533, 535 (2d Cir. 2009). "Under New York law, the statute of limitations for a defamation claim is one year." *Id.*; *see* N.Y. C.P.L.R. § 215(3). "[A]ny torts that sound in defamation are subject to defamation's one-year statute of limitations." *Button*, 2025 WL 2771663, at *9.

Here, it is not even a close question: Sherry-Lehman's RICO claim sounds in defamation. Sherry-Lehmann alleges that Mr. Stewart "defam[ed] Sherry-Lehmann" by "publishing false

statements about Sherry-Lehmann" in his May 25, 2023 *New York Times* article and then "restating many of the false allegations" in his June 16, 2023 article. Am. Compl. at 18 & ¶¶ 119–120, 127. It further alleges that Mr. Stewart, in the course of his reporting, made "misrepresentations (either knowing that they were false, or at least recklessly disregarding the truthfulness of the lies being provided to him)," then engaged in a "press smear campaign" and "publish[ed] disparaging articles about Sherry-Lehmann [i.e., the May 2023 and June 2023 articles] in an attempt to advance false allegations to the public and to government authorities." *Id*. ¶¶ 68, 158, 161–62.

The Amended Complaint also *repeatedly* emphasizes that the harm to Sherry-Lehmann was reputational. *See id.* ¶ 2 (Stewart and other co-conspirators "collaborat[ed] with editors, journalists, reporters, media outlets and industry executives to spread damaging false information about Sherry-Lehmann," with the intention of "sabotaging its reputation"); *id.* ¶ 16 (RICO Defendants "worked to intentionally damage Sherry-Lehmann's reputation"); *id.* ¶ 68 (Mr. Stewart worked with other RICO Defendants "to damage Sherry-Lehmann's business reputation"); *id.* ¶ 138(b) (RICO enterprise allegedly engaged in a scheme to "damage its reputation"); *id.* ¶ 142 (RICO Defendants initiated a dispute between Sherry-Lehmann and the New York State Liquor Authority to "damage Sherry-Lehmann's business and reputation"); *id.* ¶ 146 (predicate acts caused Sherry-Lehmann to "suffer[] significant reputational damage"); *id.* ¶ 153 (publications like Mr. Stewart's articles caused "damage" to Sherry-Lehmann's "reputation, and the reputations of [its] principals," prompting customers to cancel their wine orders"); *id.* ¶¶ 168–169 (RICO Defendants conspired in a "smear campaign" that "may have begun by December 2022" and caused "damage to Sherry-Lehmann's reputation"); *id.* ¶ 172 ("The object of the conspiracy was to negatively impact Sherry-Lehmann's reputation and salability through the Publications . . . ."); *id.* ¶¶ 9, 22, 123, 161, 165, 174 (referencing harm to Sherry-Lehmann and its owners' "reputations

in the worlds of finance and wine"). In short, the gravamen of Sherry-Lehmann's claims against Mr. Stewart is that it suffered reputational harm based on allegedly false reporting.[4]

Plaintiff's claims against Mr. Stewart are therefore subject to the one-year statute of limitations. All of the events giving rise to the claims occurred in 2023. *See* Am. Compl. ¶¶ 106, 109–110, 113, 127–128. This case was brought in October 2025, well after the one-year limitations period had run on the 2023 articles and reporting calls. Plaintiff's disguised defamation claims are untimely and must be dismissed.

## II.    PLAINTIFF'S CLAIMS ARE BARRED BY THE FIRST AMENDMENT

The Court should also dismiss Sherry-Lehmann's claims on First Amendment grounds. As the Supreme Court has routinely recognized, "speech on matters of public concern . . . is at the heart of the First Amendment's protections." *Snyder v. Phelps*, 562 U.S. 443, 451–52 (2011) (citation modified). Civil damages can no more be imposed on First Amendment-protected speech than criminal sanctions. *See id.* (civil claim for infliction of emotional distress barred by First Amendment); *Bartnicki v. Vopper*, 532 U.S. 514, 535 (2001) (broadcast of phone call illegally recorded by third party protected by First Amendment). RICO claims are "barred by the First Amendment" where the complaint "fails to adequately allege that the speech at issue is integral to the commission of any crime." *Hollander v. Pressreader, Inc.*, 2020 WL 2836189, at *3–4 (S.D.N.Y. May 30, 2020). Sherry-Lehmann contends that Mr. Stewart's speech *was* integral to the commission of a crime because, they allege (counterfactually), he "was the reason the

---

[4] Sherry-Lehmann contends that its "claims allege much more than mere reputational injury," ECF No. 20 at 1, citing the government raids, customers cancelling orders, and loss of acquisition opportunities. But those are simply third-parties' reactions to the allegedly false statements about its financial difficulties and only underscore that the claim is essentially one for defamation. *See Morrison v. Nat'l Broad. Co.*, 19 N.Y.2d 453, 458 (1967) ("A communication is defamatory . . . 'if it tends so to harm the reputation of another as to . . . deter third persons from associating or dealing with him.'").

[government] raids occurred." Am. Compl. ¶ 16. But alerting government authorities to potential financial fraud is not a crime. To the contrary, there are "important social interests in the free flow of information," and "[r]eporters are to be encouraged to investigate and expose . . . evidence of criminal wrongdoing." *United States v. Burke*, 700 F.2d 70, 77 (2d Cir. 1983).

*Pressreader* is instructive. There, the plaintiff brought a RICO claim arising out of allegations that two articles about him "deceive[d] the public" and thus amounted to wire fraud. 2020 WL 2836189, at *2. The court dismissed the claim on the basis that "the news reporting that Hollander assails as wire fraud is speech protected by the First Amendment of the United States Constitution for which civil damages to an offended audience are not available." *Id.* at *3; *see also Hollander v. CBS News Inc.*, 2017 WL 1957485, at *1 (S.D.N.Y. May 10, 2017) (granting motion to dismiss RICO claim against news organizations based on alleged "false and misleading" reporting), *vacated on other grounds*, 710 F. App'x 35 (2d Cir. 2018); *Page v. Oath Inc.*, 2018 WL 1406621, at *3 (S.D.N.Y. Mar. 20, 2018) (holding that the publication of allegedly false and misleading statements did not violate U.S. criminal law). So too, here, Stewart's reporting on Sherry-Lehmann's financial collapse is constitutionally protected speech about a "matter of public concern," *Snyder*, 562 U.S. at 453; *see, e.g.*, Am. Compl. ¶ 17 (topic was covered in *numerous* publications, and even "internationally"), and cannot form the basis for a RICO claim.

## III.    PLAINTIFF FAILS TO PLAUSIBLY ALLEGE A RICO VIOLATION

Even if Plaintiff's RICO claims were not disguised defamation claims and barred by the First Amendment, Plaintiff's efforts to plead the basic elements of a RICO violation under 18 U.S.C. § 1962(c) fall far short. A civil RICO plaintiff must plausibly allege that it "was injured by defendants' (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Kalimantano GmbH v. Motion in Time, Inc.*, 939 F. Supp. 2d 392, 404 (S.D.N.Y. 2013). The RICO statute defines "racketeering activity" to mean any of several predicate acts, including, as relevant

11

here, wire and mail fraud, 18 U.S.C. § 1961(1), and violations of the Hobbs Act, 18 U.S.C. § 1951. *See* Am. Compl. ¶¶ 138, 162. Wire or mail fraud requires "(i) a scheme to defraud (ii) to get money or property, (iii) furthered by the use of interstate mail or wires," *BWP Media USA Inc. v. Hollywood Fan Sites, LLC*, 69 F. Supp. 3d 342, 362 (S.D.N.Y. 2014), and must be pled with particularity under Rule 9(b), *see, e.g.*, *McLaughlin v. Anderson*, 962 F.2d 187, 191 (2d Cir. 1992); *Flexborrow LLC v. TD Auto Fin. LLC*, 255 F. Supp. 3d 406, 420 (E.D.N.Y. 2017). The Hobbs Act, for its part, requires robbery or extortion affecting interstate or foreign commerce. *See* 18 U.S.C. § 1951(a). In addition to pleading a Section 1962 violation, a civil RICO plaintiff must also plead "injury to the plaintiff's business or property" and "causation of the injury by the defendant's violation." *Com. Cleaning Servs., L.L.C. v. Colin Serv. Sys., Inc.*, 271 F.3d 374, 380 (2d Cir. 2001).

Plaintiff's RICO claim fails for four independent reasons.

### A.    Plaintiff Fails To Plead A RICO Enterprise

***First***, Sherry-Lehmann fails to plausibly allege the existence of a RICO enterprise or that Mr. Stewart was part of one. An enterprise requires "an ongoing organization" that "must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Zamora v. Fit Int'l Grp. Corp.*, 834 F. App'x 622, 625 (2d Cir. 2020) (citations omitted).

As to the common purpose requirement, "the individuals must share a common purpose to engage in a particular fraudulent course of conduct and work together to achieve such purposes." *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 120 (2d Cir. 2013) (citation omitted). "Individuals or entit[i]es that do not share such a common purpose cannot be considered part of a RICO enterprise as a matter of law." *Reed Constr. Data Inc. v. McGraw-Hill Cos.*, 745 F. Supp. 2d 343, 351 (S.D.N.Y. 2010). Plaintiff cannot "string[] together independent acts by different entities and claim it was a joint undertaking for an illegitimate purpose." *Malester v. Adamo*, 2010 WL

5065865, at *4 (S.D.N.Y. Dec. 8, 2010) (citing *Frangipani v. HBO*, 2010 WL 1253609 at *6 (S.D.N.Y. Mar. 16, 2010)).

Here, far from alleging a common purpose, the Amended Complaint affirmatively alleges that Mr. Stewart and the other RICO Defendants had *different* purposes. It alleges that Mr. Aaron and Mr. Yurch were concerned "they would be liable for the overdue rent payments under the Lease as personal guarantors," "hoped to be released under their good guy guaranty" for any criminal wrongdoing by Sherry-Lehmann, and wanted "to force Sherry-Lehmann into closing operations and surrendering the premises as soon as possible in order to trigger the earliest possible end date for guarantor liability." Am. Compl. ¶¶ 68–69; *see id.* ¶ 16. It alleges Mr. Yurch also had "the additional purpose of putting Sherry-Lehmann under as much financial distress as possible to drive down Sherry-Lehmann's potential acquisition price so that he might acquire the company himself at an artificial discount." *Id.* ¶ 70; *see id.* ¶¶ 78–81. Mr. Stewart, on the other hand, is alleged to have been motivated by the desire to "create popular clickbait stories" and to "garner a Pulitzer Prize" (however incongruous those two may be). *Id.* ¶¶ 2, 16. These distinct "individual self-interests" do not amount to a "common purpose" under RICO. *D. Penguin Bros. Ltd. v. City Nat'l Bank,* 587 F. App'x 663, 668 (2d Cir. 2014).[5] And, indeed, Mr. Stewart's alleged "purpose" merely emphasizes the degree to which this is a disguised defamation claim.

Next, the relationship between Mr. Stewart and the other RICO Defendants does not support an association-in-fact RICO enterprise. To determine if such an enterprise exists, courts

---

[5] Moreover, because "RICO's common purpose requirement demands more than general synchronicity or shared enmity," *Black v. Ganieva*, 619 F. Supp. 3d 309, 333 (S.D.N.Y. 2022), *aff'd*, 2023 WL 2317173 (2d Cir. Mar. 2, 2023), allegations that all RICO Defendants may have had reason to "smear" Sherry-Lehmann, *see* Am. Compl. ¶ 136, do not establish that they were acting "on behalf of the *enterprise* as opposed to on behalf of [themselves] in their individual capacities, to advance their individual self-interests." *D. Penguin Bros.*, 587 F. App'x at 668.

"analyze the hierarchy, organization, and activities of the alleged association to determine whether its members functioned as a unit." *BWP Media USA*, 69 F. Supp. 3d at 360 (citation modified). Here, "[a]ccepting plaintiff's allegations as sufficient to allege a RICO enterprise would lead to [an] absurd conclusion," *Moss v. BMO Harris Bank, N.A*., 258 F. Supp. 3d 289, 300 (E.D.N.Y. 2017) (citation omitted), because it would meant that relationships between journalists and their sources constitute a RICO enterprise. All that Plaintiff alleges is that Mr. Aaron and Mr. Stewart know each other and spoke to each other in connection with Mr. Stewart's reporting, and that Mr. Aaron thanked Mr. Stewart after Mr. Stewart emailed him a copy of the May 2023 article. *See* Am. Compl. ¶¶ 95, 105, 121. These are not allegations that Defendants "functioned as a unit"; they are allegations that Mr. Stewart was a journalist.

Finally, the Amended Complaint does not plausibly allege the required "longevity" of the enterprise. Allegations that RICO predicate acts "span[ned] at most a series of months" are insufficient. *MinedMap, Inc. v. Northway Mining, LLC*, 2022 WL 570082, at *1 (2d Cir. Feb. 25, 2022). Mr. Stewart's involvement in the "press smear campaign" is alleged to have lasted only from "December 2022," when Defendants allegedly began "orchestrat[ing]" the publication of "false articles," to June 2023, when Mr. Stewart's second article was published. *Id*. ¶¶ 15, 128, 148, 162, 170. That is too short a time for the longevity requirement. In an effort to extend the time, Plaintiff points to a February 19, 2025 article in the *New York Post*. But the *New York Post* is not a RICO Defendant or member of the alleged enterprise, and, in any event, vague allegations of misrepresentations in the *New York Post* to which Mr. Aaron contributed, *see* Am. Compl. ¶¶ 21, 140, do not amount to a continuing enterprise involving *Mr. Stewart*.

### B.    Plaintiff Fails To Plead "A Pattern Of Racketeering Activity"

***Second***, the Amended Complaint fares no better when it comes to pleading racketeering activity. The predicate acts upon which Plaintiff rests its theory of racketeering are (1) wire and

mail fraud and (2) violations of the Hobbs Act. A RICO pattern is established by showing that the predicate acts relied upon "pose a threat of continuous criminal activity and that they be related to each other." *Reich v. Lopez*, 858 F.3d 55, 59 (2d Cir. 2017). The Amended Complaint falls far short of pleading a pattern of racketeering activity.

### 1.    Plaintiff Fails To Plead Wire Or Mail Fraud

Unable to bring any legitimate claim, Sherry-Lehmann instead resorts to accusing Mr. Stewart of defrauding it to obtain money or property—even though the Amended Complaint fails to allege any facts that would support that fabricated theory. Wire or mail fraud requires "(i) a scheme to defraud (ii) to get money or property, (iii) furthered by the use of interstate mail or wires." *BWP Media USA*, 69 F. Supp. 3d at 362, and must be pled with particularity under Federal Rule of Civil Procedure 9(b), *see, e.g.*, *Anatian v. Coutts Bank (Switzerland) Ltd.*, 193 F.3d 85, 88 (2d Cir. 1999). The plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Id.* "Plaintiffs asserting mail fraud must also identify the purpose of the mailing within the defendant's fraudulent scheme." *McLaughlin*, 962 F.2d at 191.

It is "firmly established that defamation and many other similar allegations do not provide the requisite predicate for RICO violations." *Kimm v. Lee*, 2005 WL 89386, at *5 (S.D.N.Y. Jan. 13, 2005), *aff'd sub nom.*, *Kimm v. Chang Hoon Lee & Champ, Inc.*, 196 F. App'x 14 (2d Cir. 2006); *see also, e.g.*, *Rajaratnam v. Motley Rice, LLC*, 449 F. Supp. 3d 45, 73–74 (E.D.N.Y. 2020) ("Plaintiff's attempt to spin an alleged scheme to harm a plaintiff's reputation into a RICO claim fails, and federal courts routinely and soundly reject such attempts.") (citation modified); *Pressreader*, 2020 WL 2836189, at *4 (reputational injury "is not actionable harm under the mail or wire fraud statutes" and "is not based on an injury to what has commonly been known as

15

property") (citation modified). "[A] smear campaign . . . is not mail or wire fraud." *Black*, 619 F. Supp. 3d at 344. And here, as discussed above, because the alleged fraud is predicated on "misrepresent[ations] [of] Sherry-Lehmann's business practices in numerous articles in the press," it sounds in defamation. Am. Compl. ¶¶ 138, 162, 168. *See supra* Section I. Plaintiff's claim fails for this reason alone.

In addition, wire and mail fraud require a scheme to "obtain[] money or property by means of false or fraudulent pretenses, representations, or promises." 18 U.S.C. § 1343 (wire fraud); *id.* § 1341 (mail fraud). "[T]he misappropriation of 'property rights'" is essential; conduct that merely is "deceptive" or "depart[s] from traditional notions of fundamental honesty and fair play" is insufficient to support wire fraud. *United States v. Chastain*, 145 F.4th 282, 296 (2d Cir. 2025). The misappropriation of property must be an "object of the fraud" and not merely "an incidental byproduct of the scheme." *Kelly v. United States*, 590 U.S. 391, 402 (2020) (citations omitted). Sherry-Lehmann does not allege that Mr. Stewart published his articles in order to "obtain[] money or property" or that Sherry-Lehmann was "induced to part with anything of value as a result." *Kimm*, 2005 WL 89386, at *4. To the contrary, it alleges that Mr. Stewart *declined* Sherry-Lehmann's offer to deliver his wines because he didn't want "special favors." Am. Compl. ¶ 96. Similarly, misrepresenting one's identity does not support a finding of mail or wire fraud. *See Santana v. Adler*, 2018 WL 2172699, at *5 (S.D.N.Y. Mar. 26, 2018), *report & recommendation adopted*, 2018 WL 2170299 (S.D.N.Y. May 10, 2018). Thus, Sherry-Lehmann's allegations that Mr. Stewart "did not announce himself by his name, or any name," Am. Compl. ¶ 106, or "impersonated a customer of Wine Caves," *id.* ¶ 105—both false—do not change the outcome. Plaintiff falls far short of pleading wire or mail fraud with particularity.

## 2.    Plaintiff Fails To Plead A Hobbs Act Violation

Even more preposterous is Plaintiff's Hobbs Act claim. "The Hobbs Act prohibits robbery or extortion—including conspiracy and attempt—that affects interstate commerce." *United States v. Kirsch*, 903 F.3d 213, 221 (2d Cir. 2018) (citing 18 U.S.C. § 1951(a)). "The Hobbs Act defines extortion as 'the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear.'" *Id*. (quoting 18 U.S.C. § 1951(b)(2)). Plaintiff's complaint—which conspicuously does not mention robbery or extortion—fails to allege that Mr. Stewart or the other RICO Defendants "obtain[ed] . . . property from" Sherry-Lehmann or that the RICO Defendants engaged in the "wrongful use of actual or threatened force, violence, or fear."

First, "[o]btaining property" under the Hobbs Act "requires 'not only the deprivation but also the acquisition of property'"—that is, extortion "requires that the victim part with his property, and that the extortionist gain possession of it." *Sekhar v. United States*, 570 U.S. 729, 734 (2013) (quoting *Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393, 404 (2003)). Sherry-Lehmann alleges that it "suffered losses to," *inter alia*, "physical property valued in excess of $20 million," Am. Compl. ¶¶ 165, 174, 186—seemingly referring to the fact that a potential acquisition by a French vineyard owner did not go through, *see id.* ¶ 8—but nowhere alleges that any of the RICO Defendants *acquired* the allegedly lost $20 million. The Amended Complaint, therefore, fails to allege the first requirement for a Hobbs Act predicate act.

Second, the Hobbs Act is "absolutely explicit" in requiring a "link between physical violence" and the "robbery or extortion." *Scheidler v. Nat'l Org. for Women, Inc.*, 547 U.S. 9, 19 (2006). But there are no such allegations in the Complaint. The only even conceivably physically violent acts alleged are the raids on Sherry-Lehmann and Wine Caves, which were carried out not by any RICO Defendant but by duly authorized government officials. *See* Am. Compl. ¶¶ 18, 128.

Further, Mr. Stewart's articles are all First Amendment-protected speech about a matter of

public concern, which cannot support a Hobbes Act claim. *See, e.g.*, *Cintas Corp. v. United Here*, 601 F. Supp. 2d 571, 578 (S.D.N.Y. 2009) ("[Plaintiff] does not have a right to operate free from any criticism. . . . [Plaintiff's] allegations do not rise to the level of criminal extortion."), *aff'd*, 355 F. App'x 508 (2d Cir. 2009). And even if Mr. Stewart's Sherry-Lehmann cannot plead a predicate Hobbs Act violation.

### C.    Plaintiff Fails To Plead Mr. Stewart Proximately Caused Any Injury

*Third*, Sherry-Lehmann fails to plead either a cognizable injury or proximate causation. "RICO provides a civil remedy only to those persons injured 'by reason of' the defendant's predicate acts." *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 769 (2d Cir. 1994).

The Amended Complaint fails because it does not allege any "concrete financial loss." *Westchester Cnty. Indep. Party v. Astorino*, 137 F. Supp. 3d 586, 613 (S.D.N.Y. 2015). "[M]ere injury to character [and] business reputation [is] not actionable under civil RICO." *Tsipouras v. W&M Props., Inc.*, 9 F. Supp. 2d 365, 368 (S.D.N.Y. 1998); *see also Kimm*, 196 F. App'x at 16 ("generalized reputational harms alleged . . . are too speculative to constitute an injury to business or property"). Sherry-Lehmann's allegations about "losses to reputation," *e.g.*, Am. Compl. ¶¶ 16, 165, are, therefore, insufficient.

Plaintiff's allegation that Sherry-Lehmann lost customers and suppliers, *e.g.*, Am. Compl. ¶¶ 20, 136, 153, similarly is insufficient because it fails to specifically identify a single customer or supplier that would have purchased from, or supplied to, Sherry-Lehmann but-for any conduct involving Mr. Stewart. *See, e.g.*, *Petroff Amshen LLP v. Alfa Rehab PT PC*, 2021 WL 960394, at *12 (E.D.N.Y. Mar. 15, 2021) (dismissing complaint that "fail[s] to identify specific instances of lost business and only conclusorily allege[s] potential lost clients").[6] And Plaintiff's allegation that

---

[6] Sherry-Lehmann identifies one customer in Texas who did not place further orders with Sherry-Lehmann after April 2023 and sought the return of wine he owned and was storing with Wine

a "prospective" acquisition deal failed to materialize, *e.g.*, *id.* ¶¶ 81, 154, is insufficient because it is wholly speculative that that acquisition—which had not moved forward since it was floated in 2020, *id.* ¶ 52—would in fact have materialized or would have benefitted Sherry-Lehmann.

Sherry-Lehmann also failed to adequately plead causation. To do so, "the plaintiff must allege 'that the defendant's violations were a proximate cause of the plaintiff's injury, i.e., that there was a direct relationship between the plaintiff's injury and the defendant's injurious conduct.'" *First Nationwide Bank*, 27 F.3d at 769 (citation omitted). "This requires a showing not only that the defendant's alleged RICO violation was the 'but-for' or cause-in-fact of his injury, but also that the violation was the legal or proximate cause." *Id.* (citations omitted). "[W]hen factors other than the defendant's fraud are an intervening direct cause of a plaintiff's injury, that same injury cannot be said to have occurred by reason of the defendant's actions." *Id.* (citation omitted); *see also, e.g.*, *Red Ball Interior Demolition Corp. v. Palmadessa*, 874 F. Supp. 576, 587 (S.D.N.Y. 1995) ("Injury which results indirectly from the predicate acts does not confer standing under RICO."); *Doe v. Trump Corp.*, 385 F. Supp. 3d 265, 276–77 (S.D.N.Y. 2019) ("[E]ven at the pleading stage, civil RICO's direct relation requirement is rigorous and requires dismissal where substantial intervening factors attenuate the causal connection between the defendant's conduct and the plaintiff's injury."). Causation must be pled with particularity. *See, e.g.*, *Entretelas Americanas S.A. v. Soler*, 2020 WL 9815186, at *9 (S.D.N.Y. Feb. 3, 2020).

But Sherry-Lehmann's Complaint actually renders impossible its ability to meet this threshold because it pleads its financial difficulties began as early as 2009 and had become acute

---

Caves. *See* Am. Compl. ¶¶ 106–107; ECF No. 20 at 3. But it does not allege that he would otherwise have placed future orders (an implausible proposition, given that Sherry-Lehmann was already closed by March 2023), and a customer recovering his *own* wine from storage does not amount to a loss of any property belonging to Sherry-Lehmann or Wine Caves.

by 2020, *see, e.g.*, Am. Compl. ¶¶ 47, 54, 62, 193—long before Mr. Stewart allegedly began making calls to customers in April 2023 or published his articles in May and June 2023. Indeed, according to Mr. Stewart's May 2023 article, Sherry-Lehmann co-owner Shyda Gilmer "acknowledged that the business had been struggling," and "attributed the problems" not to Mr. Stewart but "to the lingering impact of the pandemic, tariffs imposed on many European wines by the Trump administration, mismanagement by former executives and administrative snafus." *See* Bolger Decl. Ex. F. By the time Mr. Stewart's article was published, the store had already closed. *Id.*; *see* Bolger Decl. Ex. D.

Additionally, the Amended Complaint alleges that more than ten other news outlets apart from *The New York Times* were also writing about Sherry-Lehmann's financial difficulties, *see* Am. Compl. ¶¶ 15, 17, with both the *New York Post* and *Wine Spectator* publishing lengthy articles about its debts and alleged failure to satisfy customer orders before Mr. Stewart's May 2023 article came out, *see id.* ¶¶ 71, 76, 84, 88.[7] Additionally, the Amended Complaint alleges that, in December 2022 (again, well before Mr. Stewart's articles were published), two former Sherry-Lehmann customers filed a lawsuit "demanding the projected market value of the wine they never received pursuant to their wine futures purchase orders." *Id.* ¶ 71. In light of the lawsuits and widespread bad press about Sherry-Lehmann's financial condition, Mr. Stewart cannot be said to be the proximate cause of the government raids, any alleged customer cancellations of orders, or

---

[7] Even if Mr. Stewart (implausibly) had any involvement in the *New York Post* and *Wine Spectator* articles, Sherry-Lehmann cannot allege he was the but-for cause of those articles being published; the writers and editors of those publications were, at a minimum, an "intervening direct cause" of those publications. Moreover, anything false or misleading in the *New York Post* or *Wine Spectator* articles could also have been cleared up had Gilmer and Green chosen to respond to requests for comment, which they did not, according to those articles. *See Nygard v. Bacon*, 2021 WL 4926078, at *1 (S.D.N.Y. Oct. 21, 2021) ("A plaintiff fails to establish a RICO injury where the injury flowed from the plaintiffs' voluntary decisions.").

the alleged decision by the French vineyard owner not to acquire Sherry-Lehmann.

## IV.   PLAINTIFF FAILS TO PLAUSIBLY ALLEGE A RICO CONSPIRACY

This Court should also dismiss Sherry-Lehmann's equally meritless RICO conspiracy claim. First, a RICO conspiracy claim must be dismissed when it relies on the same factual predicate as a substantive RICO claim that fails. *See, e.g.*, *Zamora*, 834 F. App'x at 626. Here, the factual predicate for the RICO and RICO conspiracy claims is the same. *Compare* Am. Compl. ¶¶ 158, 162 (alleging the RICO Defendants "collaborated with various media outlets to publish disparaging articles about Sherry-Lehmann" and engaged in an "intentional press smear campaign"), *with id.* ¶¶ 168, 170 (alleging the RICO Defendants "coordinat[ed]" with news outlets to engage in a "press smear campaign" to damage "Sherry-Lehmann's reputation and business"). Sherry-Lehmann's failure to plead a RICO predicate act thus dooms its RICO conspiracy claim.

Second, to plead RICO conspiracy, "a civil plaintiff must demonstrate that the alleged coconspirators knew about and agreed to facilitate a pattern of racketeering activity," *Black*, 619 F. Supp. 3d at 329 (internal quotation marks and citation omitted); *see also Butcher v. Wendt*, 975 F.3d 236, 241 (2d Cir. 2020) ("To state a claim for RICO conspiracy under § 1962(d), the plaintiff must also 'allege the existence of an agreement to violate RICO's substantive provisions.'") (citation omitted). Plaintiff's allegations that Mr. Stewart "had a friendship with Defendant Aaron for more than twenty years" and used Mr. Aaron and Mr. Adams as "sources" for his May 2023 article, *see* Am. Compl. ¶¶ 95, 113, fall far short of establishing an agreement amongst the RICO Defendants to commit wire fraud, mail fraud, or extortion.[8] "Because the core of a RICO civil

---

[8] Plaintiff cites *Kriss v. Bayrock Group LLC*, 2017 WL 1901966 (S.D.N.Y. May 8, 2017), and *City of New York v. Chavez*, 2012 WL 1022283 (S.D.N.Y. Mar. 26, 2012) in support of its RICO conspiracy claim. *See* ECF No. 23 at 3. *Kriss* found that allegations certain defendants "prepar[ed] accounting documents" used to conceal the alleged co-conspirator's payment and ownership information supported a conspiracy to commit the predicate acts. 2017 WL 1901966, at *3. *City of New York* pointed to fraudulent invoices as evidence that the defendants knowingly sought to

21

conspiracy is an agreement to commit predicate acts," the failure to plead any agreement compels dismissal of the claim. *Hecht v. Com. Clearing House, Inc.*, 897 F.2d 21, 25 (2d Cir. 1990).

Finally, Plaintiff's failure to allege any injury "caused by an overt act . . . of racketeering" compels dismissal of its RICO conspiracy claim. *Beck v. Prupis*, 529 U.S. 494, 507 (2000). As explained above, any alleged financial harm arising from customers' cancellations or the French vineyard owner's decision not to acquire Sherry-Lehmann is not caused by any racketeering act.

## V.    MR. STEWART SHOULD BE AWARDED ATTORNEYS' FEES AND COSTS

New York's anti-SLAPP law makes an award of attorneys' fees and costs mandatory if a lawsuit "involving public petition and participation" is "commenced or continued without a substantial basis in fact and law." N.Y. Civ. Rights L. § 70-a(1). This lawsuit "involve[es] public petition and participation" because the claim is based on "a[] communication in a place open to the public or a public forum in connection with an issue of public interest" or "other lawful conduct in furtherance of the exercise of the constitutional right of free speech in connection with an issue of public interest." N.Y. Civ. Rights L. § 76-a(1)(a); *see Button*, 2025 WL 2643674, at *20 (claims arising out of New York Times article involved "public petition and participation").

Because the anti-SLAPP law's fee award provision is substantive, it applies in federal court. *See, e.g.*, *id.*; *Bobulinski v. Tarlov*, 758 F. Supp. 3d 166, 183–86 (S.D.N.Y. 2024); *Heilbut v. Cassava Sciences, Inc.*, 778 F. Supp. 3d 551, 566–69.[9] As Judge Oetken explained in a thoroughly reasoned recent decision, the fee provision of the New York anti-SLAPP law does not

_____

further the conspiracy to traffic cigarettes without New York City tax stamps. 2012 WL 1022283, at *8. Neither case remotely supports finding a RICO conspiracy on the facts pled here.

[9] While some courts in this Circuit have reached a different conclusion, Mr. Stewart respectfully disagrees with those decisions, including because "the entitlement to attorney's fees under the New York anti-SLAPP law follows from the failure to state a claim as a matter of New York law." *Bobulinski*, 758 F. Supp. 3d at 184; *see* Matthew L. Schafer & Tanvi Valsangikar, *The Application of the New York Anti-SLAPP Scheme in Federal Court*, 2 J. Free Speech L. 573, 599–614 (2023).

conflict with the Federal Rules of Civil Procedure; it "merely defin[es] the substantive standard for entitlement to attorney's fees"—specifically, when "the claim is 'without a substantial basis in fact and law'"—and thus applies in federal court on *Erie* grounds. *Bobulinski*, 758 F. Supp. 3d at 186. Applying the statute in federal court "further[s] the 'twin aims' of *Erie*," namely "furthering equitable administration of laws," by ensuring that defendants defending SLAPP suits in state and federal courts have similar outcomes, and "preventing forum shopping" by plaintiffs who "may choose to bring meritless SLAPP suits in federal court to avoid having to pay attorney's fees." *Id*.

Because this lawsuit lacks a substantial basis for the reasons set forth above, Mr. Stewart is entitled to an award of fees and costs. To the extent Mr. Stewart is required at this stage to "state the amount sought or provide a fair estimate of it," *Button*, 2025 WL 2643674, at *21 (quoting Fed. R. Civ. P. 54(d)(2)(B)), Mr. Stewart estimates that attorney's fees through any argument on the instant motion to dismiss will be approximately $125,000.

## <u>CONCLUSION</u>

For the foregoing reasons, Mr. Stewart respectfully requests that the Court dismiss the claims against him with prejudice[10] and award him fees and costs under the anti-SLAPP law.

---

[10] Dismissal with prejudice is warranted because Plaintiff has already had an "opportunity to amend the deficiencies in its complaint" after the RICO Defendants filed their pre-motion letters. *Document Techs., Inc. v. LDiscovery, LLC*, 731 F. App'x 31, 34 (2d Cir. 2018).

Dated: November 13, 2025

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

By: */s/ Katherine M. Bolger*
    Katherine M. Bolger
    Alexandra Perloff-Giles
    1251 Avenue of the Americas, 21st Floor
    New York, New York 10020-1104
    Phone: (212) 489-8230
    Fax: (212) 489-8340
    katebolger@dwt.com
    alexandraperloffgiles@dwt.com

    *Counsel for Defendant James Stewart*