UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SHERRY-LEHMANN, INC. d/b/a
SHERRY-LEHMANN WINE AND SPIRITS,

*Plaintiff*,

- against -

JAMES STEWART, MICHAEL AARON,
CHRIS ADAMS, and MICHAEL YURCH,

*Defendants*.

Case No. 1:25-cv-4427-ALC

**REPLY MEMORANDUM IN FURTHER SUPPORT OF**
**DEFENDANT JAMES STEWART'S MOTION TO DISMISS**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ..... 1
ARGUMENT ..... 1
I. PLAINTIFF'S CLAIMS ARE TIME-BARRED DEFAMATION CLAIMS ..... 1
II. PLAINTIFF'S CLAIMS ARE BARRED BY THE FIRST AMENDMENT ..... 2
III. PLAINTIFF FAILS TO PLAUSIBLY ALLEGE A RICO VIOLATION ..... 4
A. Plaintiff Fails to Plead A RICO Enterprise ..... 4
B. Plaintiff Fails to Plead "A Pattern Of Racketeering Activity" ..... 6
1. Plaintiff Fails to Plead Wire or Mail Fraud ..... 6
2. Plaintiff Fails to Plead a Hobbs Act Violation ..... 8
C. Plaintiff Fails to Adequately Allege Proximate Cause ..... 8
IV. PLAINTIFF FAILS TO STATE A RICO CONSPIRACY CLAIM ..... 9
V. MR. STEWART SHOULD BE AWARDED ATTORNEYS' FEES ..... 10
CONCLUSION ..... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Beter v. Murdoch*,
2018 WL 3323162, (S.D.N.Y. June 22, 2018),
*aff'd*, 71 F. App'x 62 (2d Cir. 2019)....................3, 5, 6, 8

*Black v. Ganieva*,
619 F. Supp. 3d 309 (S.D.N.Y. 2022), *aff'd*, 2023 WL 2317173 (2d Cir. Mar. 2, 2023) .........9

*Bobulinski v. Tarlov*,
758 F. Supp. 3d 166 (S.D.N.Y. 2024)....................10

*Branzburg v. Hayes*,
408 U.S. 665 (1972)....................3

*Button v. Breshears*,
2025 WL 2771663 (S.D.N.Y. Sept. 26, 2025),
*appeal filed*, No. 25-2696 (2d Cir. Oct. 27, 2025)....................1

*Button v. N.Y. Times Co.*,
2025 WL 2643674 (S.D.N.Y. Sept. 15, 2025)....................10

*City of New York v. Chavez*,
2012 WL 1022283 (S.D.N.Y. Mar. 26, 2012) ....................9

*Cruz v. FXDirectDealer, LLC*,
720 F.3d 115 (2d Cir. 2013)....................5

*D. Penguin Bros. Ltd. v. City National Bank*,
587 F. App'x 663 (2d Cir. 2014) ....................5

*Erie R. Co. v. Tompkins*,
304 U.S. 64 (1938)....................10

*Gertz v. Robert Welch, Inc.*,
418 U.S. 323 (1974)....................2

*Heilbut v. Cassava Sciences, Inc.*,
778 F. Supp. 3d 551 (S.D.N.Y. 2025)....................10

*Hollander v. CBS News Inc.*,
2017 WL 1957485 (S.D.N.Y. May 10, 2017), *vacated on other grounds by*
*Hollander v. Garrett*, 710 F. App'x 35 (2d Cir. 2018) ....................2, 3, 6

*Hollander v. Pressreader, Inc.*,
2020 WL 2836189 (S.D.N.Y. May 30, 2020) ....................1, 2

*Kaliman-tano GmbH v. Motion in Time, Inc.*,
939 F. Supp. 2d 392 (S.D.N.Y. 2013)....................6

*Kimm v. Lee*,
2005 WL 89386 (S.D.N.Y. Jan. 13, 2005),
*aff'd sub nom Chang Hoon Lee & Champ, Inc.*, 196 F. App'x 14 (2d Cir. 2006) ....................2

*Kriss v. Bayrock Grp., LLC*,
2016 WL 7046816 (S.D.N.Y. Dec. 2, 2016),
*on reconsideration in part*, 2017 WL 1901966 (S.D.N.Y. May 8, 2017) ....................9

*Liang Wang v. Sussman*,
2025 WL 2607155 (S.D.N.Y. Sept. 9, 2025),
*appeal filed*, No. 25-2487 (2d Cir. Oct. 8, 2025)....................10

*McLaughlin v. Anderson*,
962 F.2d 187 (2d Cir. 1992)....................8

*Nat'l Org. for Women, Inc. v. Scheidler*,
510 U.S. 249 (1994) (Souter, J., concurring)....................2

*Nicholas v. Bratton*,
376 F. Supp. 3d 232 (S.D.N.Y. 2019)....................3

*O'Neill v. Oakgrove Constr., Inc.*,
71 N.Y.2d 521 (1988) ....................3

*Page v. Oath Inc.*,
2018 WL 1406621 (S.D.N.Y. Mar. 20, 2018), *aff'd* 797 F. App'x 550 (2d Cir. 2019) ....................3

*Philatelic Foundation v. Kaplan*,
1986 WL 5629 (S.D.N.Y. May 9, 1986),
*rev'd,* 647 F. Supp. 1344 (S.D.N.Y. 1986) ....................2

*Rajaratnam v. Motley Rice, LLC*,
449 F. Supp. 3d 45 (E.D.N.Y. 2020) ....................1

*Reich v. Lopez*,
38 F. Supp. 3d 436 (S.D.N.Y. 2014), *aff'd* 858 F.3d 55 (2d Cir. 2017) ....................2

*Santana v. Adler*,
2018 WL 2172699 (S.D.N.Y. Mar. 26, 2018),
*report & recommendation adopted*, 2018 WL 2170299 (S.D.N.Y. May 10, 2018)....................7

*United States v. Burke*,
700 F.2d 70 (2d Cir. 1983)....................................................................................................4

*United States v. Males*,
459 F.3d 154 (2d Cir. 2006)..................................................................................................7

*Vinas v. Chubb Corp.*,
499 F. Supp. 2d 427 (S.D.N.Y. 2007)...................................................................................2

*Zamora v. Fit Int'l Grp. Corp.*,
834 F. App'x 622 (2d Cir. 2020) ..........................................................................................5

## PRELIMINARY STATEMENT

Plaintiff Sherry-Lehmann, Inc.'s opposition to James Stewart's motion to dismiss ("Opp.") confirms that dismissal is appropriate here. Plaintiff does not meaningfully dispute that its RICO claims against Mr. Stewart, a reporter, are defamation claims in disguise, seeking damages based on alleged reputational harm from the publication of allegedly false statements. This case is therefore both time-barred and incompatible with the First Amendment and should be dismissed.

Even if it did not run headlong into the First Amendment, the RICO claim against Mr. Stewart fails because Plaintiff fails to plead a RICO enterprise, fails to plead either wire or mail fraud or a Hobbs Act violation, and fails to plead that Mr. Stewart proximately caused any injury. The Court should also dismiss the RICO conspiracy claim, because, at a minimum, it requires a substantive RICO violation. The Amended Complaint ("Am. Compl.") should be dismissed with prejudice, and Mr. Stewart should be awarded his fees and costs in defending against this meritless lawsuit.

## ARGUMENT

### I. PLAINTIFF'S CLAIMS ARE TIME-BARRED DEFAMATION CLAIMS

As set forth in Mr. Stewart's opening brief ("Mot.), Plaintiff's claims against Mr. Stewart are "thinly clothed defamation claims," *Hollander v. Pressreader, Inc.*, 2020 WL 2836189, at *4 (S.D.N.Y. May 30, 2020), brought well after the statute of limitations has run. Mot. at 8–10. "It is the essence of the action . . . that controls." *Button v. Breshears*, 2025 WL 2771663, at *9 (S.D.N.Y. Sept. 26, 2025), *appeal filed*, No. 25-2696 (2d Cir. Oct. 27, 2025). "[F]ederal courts routinely and soundly reject . . . attempts" to "'spin an alleged scheme to harm a plaintiff's [] reputation' into a RICO claim." *Rajaratnam v. Motley Rice,* LLC, 449 F. Supp. 3d 45, 73–74 (E.D.N.Y. 2020) (quoting *Kimm v. Lee*, 2005 WL 89386, at *5 (S.D.N.Y. Jan. 13, 2005), *aff'd sub nom Chang Hoon Lee & Champ, Inc.*, 196 F. App'x 14 (2d Cir. 2006)) (collecting cases).

Plaintiff admits that it "allege[s] reputational injury" based on the publication of allegedly "false" statements in Mr. Stewart's *New York Times* articles, Opp. at 3—essentially the definition of a claim for defamation. False statements tending to cause injury to one's business are paradigmatic examples of defamation *per se*. *See Kforce, Inc. v. Alden Personnel, Inc.*, 288 F. Supp. 3d 513, 517 (S.D.N.Y. 2003). The essence of this action is defamation and it is time barred.[1]

Plaintiff argues its allegations of "economic damage to Plaintiff's financial health and operability" somehow transform its claim from a defamation claim to a RICO claim. Opp. at 6. Plaintiff is confused. While financial losses from reputational harm are compensable in a successful RICO suit, the issue here is what predicate act can make out a RICO claim in the first instance. The courts are clear: defamation is not a proper predicate act. Even Plaintiff's own case makes this point. In *Reich v. Lopez*, the court recognized that construing RICO allegations too generally risked impermissibly allowing defamation claims to serve as predicate acts for RICO claims. 38 F. Supp. 3d 436 (S.D.N.Y. 2014), *aff'd* 858 F.3d 55 (2d Cir. 2017).[2] Plaintiff's claims sound in defamation, which is both time-barred as a claim here and which "do[es] not provide the requisite predicate for RICO violations." *Kimm*, 2005 WL 89386, at *5.

## II. PLAINTIFF'S CLAIMS ARE BARRED BY THE FIRST AMENDMENT

Next, as set forth in Mr. Stewart's opening brief, Plaintiff's complaint, which targets newsgathering and publishing activity, should be dismissed because where, as here, "[c]onduct alleged to amount to" a RICO predicate act "turn[s] out to be fully protected First Amendment Activity," the "defendant [is entitled] to dismissal on that basis." *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 264 (1994) (Souter, J., concurring). This principle is well established in

[1] Sherry-Lehmann even cites *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974), a defamation case. Opp. at 8.

[2] Plaintiff's other cited case, *Philatelic Foundation v. Kaplan*, 1986 WL 5629, at *11 (S.D.N.Y. May 9, 1986) (cited in Opp. at 6), not only does not discuss defamation; it also is not good law. A few months after that decision, the court reversed itself, holding that it "is no longer the law of the case." 647 F. Supp. 1344, 1345 (S.D.N.Y. 1986).

cases like *Pressreader*, 2020 WL 2836189, at *7–8; *Hollander v. CBS News Inc.*, 2017 WL 1957485, at *1 (S.D.N.Y. May 10, 2017), *vacated on other grounds by Hollander v. Garrett*, 710 F. App'x 35 (2d Cir. 2018), and *Page v. Oath Inc.*, 2018 WL 1406621, at *3 (S.D.N.Y. Mar. 20, 2018), *aff'd* 797 F. App'x 550 (2d Cir. 2019), which Plaintiff barely addresses.[3] Plaintiff argues those cases did not involve speech alleged to be integral to the commission of any crime and its complaint does. But Plaintiff is simply incorrect—for instance, the complaint in *CBS News*, like the complaint here, alleged the news defendants committed "the crime of fraud." *Compare* Am. Compl., *CBS News*, 2016 WL 11729074 (S.D.N.Y. Oct. 20, 2016), *with* Am. Compl. ¶¶ 147–48.

More importantly, beyond the conclusory allegation of "criminal conduct," Plaintiff does not identify any crime to which Mr. Stewart's speech was integral. That was fatal to the claim in *Page*, and it should be fatal here. Plaintiff tries to distinguish that case, yet concedes that the "alleged 'act of international terrorism'" at issue there "was the simple act of publication." Opp. at 8. That, of course, is almost exactly the "fraud" Plaintiff alleges here: that Mr. Stewart was "publish[ing] . . . information about Sherry-Lehmann" from some sources and continuing to call other sources after a first article was published. Opp. at 8–9. And Sherry-Lehmann's three arguments as to why Mr. Stewart's conduct went beyond "journalism" fail.

*First*, Sherry-Lehmann argues that the First Amendment does not protect Mr. Stewart because the "fraud" was not the publication of the articles alone but also Mr. Stewart allegedly "calling Sherry-Lehmann's customers." Opp. at 18. But "calling customers" is another way of saying "newsgathering"—conduct squarely protected by the First Amendment. *See, e.g.*, *Branzburg v. Hayes*, 408 U.S. 665, 681 (1972) ("[W]ithout some protection for seeking out the news, freedom of the press could be eviscerated."); *Nicholas v. Bratton*, 376 F. Supp. 3d 232, 279

[3] Plaintiff's opposition brief simply ignores 57 of the 67 cases cited in Mr. Stewart's opening brief, *compare* Mot. at i-v, *with* Opp. at ii-iii.

(S.D.N.Y. 2019) (First Amendment protects the "right to gather news"); *O'Neill v. Oakgrove Constr., Inc.*, 71 N.Y.2d 521, 526 (1988) (affirming the need to protect "[t]he ability of the press freely to collect and edit news").

*Second*, Shery-Lehmann argues that it was "fraudulent[]" for Mr. Stewart to represent that he was a Sherry-Lehmann customer who had not received his wines. Opp. at 1. But Plaintiff's opposition confirms he was a customer and he did not receive his wines. *Id*. at 19. And there is nothing "fraudulent[]" about "suggesting that customer wines were being stolen," Opp. at 1—a suggestion that had already been made public through customer lawsuits and reporting by the *New York Post*, *Wine Spectator*, and other outlets that "angry customers [were] claim[ing] they're not getting the deliveries they paid for." Am. Compl. ¶¶ 71, 88; ECF No. 42-2; ECF No. 42-4.

*Finally*, Sherry-Lehmann argues that Mr. Stewart was not acting as a journalist when he allegedly "instigated the government raids." Opp. at 7. But journalists do report on potential wrongdoing.[4] And in any event, it is not plausible that Mr. Stewart's articles induced "multiple . . . raids over days at two locations," with "as many as 200 agents [to] the Blue Hill facility for five days" in 2023 and "a subsequent raid in May 2024." Am. Compl. ¶¶ 4, 128–30.

In short, Sherry-Lehmann's claim against Mr. Stewart is based on constitutionally protected reporting and is barred by the First Amendment.

## III. PLAINTIFF FAILS TO PLAUSIBLY ALLEGE A RICO VIOLATION

### A. Plaintiff Fails to Plead A RICO Enterprise

Plaintiff has not plausibly pled a RICO enterprise. Its opposition does little more than repeat conclusory allegations that Defendants "conspired . . . in the press smear campaign" to

[4] Sherry-Lehmann contends Mr. Stewart's citation to *United States v. Burke*, 700 F.2d 70, 77 (2d Cir. 1983), is "inappropriate" because this case "raises no issues about protecting the confidentiality of reporter's sources." Opp. at 8–9. But Mr. Stewart cited *Burke* for the proposition that reporters should be encouraged to investigate wrongdoing, as Mr. Stewart did here, Mot. at 11, not for the application of the reporter's privilege.

"damage[e] Sherry-Lehmann's business reputation," Opp. at 10, and beat a straw man in arguing that "an association-in-fact enterprise need not have a fraudulent or illegal common purpose" (even though Mr. Stewart never claimed it did), *id.* at 11. Plaintiff's conclusory allegations are insufficient. Mot. at 7, 18.

To begin, Plaintiff's arguments on the common purpose requirement miss the mark. Plaintiff fails to address Mr. Stewart's argument that it pled different purposes for Mr. Stewart compared to the other RICO defendants. *See* Mot. at 13. Not only does Plaintiff ignore cases like *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115 (2d Cir. 2013) and *D. Penguin Bros. Ltd. v. City National Bank*, 587 F. App'x 663 (2d Cir. 2014), which held that "individual self-interests" do not amount to a "common purpose" under RICO, *D. Penguin Bros.*, 587 F. App'x at 668, but it then seeks to recast Defendants' "common purpose" as "publishing a series of articles about Sherry-Lehmann." Opp. at 11. While this contention certainly makes clear that this is a defamation claim in disguise, it is not even in the complaint. Instead, the Complaint alleges that each RICO Defendant pursued his own self-interest—i.e., pursuing clicks and awards, in Mr. Stewart's case, and avoiding guarantor liability, in Mr. Aaron and Mr. Yurch's case. Mot. at 13. Those divergent motivations, even if they were true, do not amount to a common purpose.

Next, in response to Mr. Stewart's argument that it fails to plausibly allege an association-in-fact, *Zamora v. Fit Int'l Grp. Corp.*, 834 F. App'x 622, 625 (2d Cir. 2020), Plaintiff points to the facts that Mr. Stewart allegedly "had a friendship with [Mr.] Aaron for more than twenty years"[5] and a source relationship with Mr. Yurch. Opp. at 12; Am. Compl. ¶¶ 95, 121, 143, 161. But this court has rejected similar allegations. In *Beter v. Murdoch*, the court held that the plaintiff

[5] Though Sherry-Lehmann states in its opposition that "Aaron, Stewart, and Yurch have known each other for decades," Opp. at 2, the amended complaint alleges only that Mr. Stewart knew *Mr. Aaron* "for more than twenty years," Am. Compl. ¶ 95; it makes no allegation about how long Mr. Stewart and Mr. Yurch have known each other.

failed to plead a RICO enterprise involving a reporter, his publication, and others affiliated with that publication because, among other things, the plaintiff did not "provide 'solid information regarding the hierarchy, organization, and activities' of the enterprise." 2018 WL 3323162, at *6 (S.D.N.Y. June 22, 2018) (quoting *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 174 (2d Cir. 2004)), *aff'd*, 71 F. App'x 62 (2d Cir. 2019). The association alleged here is even more amorphous: if even the relationship between a reporter and persons or entities affiliated with the publication for which he wrote is not a "unit," certainly the relationship between a reporter and his *sources* is not.

Finally, as to the longevity requirement, Plaintiff makes no effort to explain how articles in the *New York Post* represent the beginning and end of the RICO enterprise, when no person affiliated with the *New York Post* is alleged to be part of the enterprise. Opp. at 13.

**B. Plaintiff Fails to Plead "A Pattern Of Racketeering Activity"**

A RICO plaintiff must also plausibly allege a pattern of racketeering activity. *E.g.*, *Kalimantano GmbH v. Motion in Time, Inc.*, 939 F. Supp. 2d 392, 404 (S.D.N.Y. 2013). Plaintiff points to two predicate forms of racketeering: wire or mail fraud and a violation of the Hobbs Act.

**1. Plaintiff Fails to Plead Wire or Mail Fraud**

Plaintiff acknowledges its burden to plead wire fraud with particularity, Opp. at 13–14, and points to four allegations it claims satisfy that burden. None do. *First*, it points to the allegation that Mr. Stewart reported in *The Times* that Plaintiff's 2020 revenue plunged from $30 million to $15 million despite a denial of those figures by Plaintiff's spokesperson. Am. Compl. ¶¶ 114, 141. But, as Plaintiff knows, Mr. Stewart reported both the annual revenue figures *and* that the company

disputed those figures. *See* Am. Compl. ¶ 114; Opp. at 14.[6] Full disclosure is hardly a fraudulent act. "[L]abelling acts of journalism as acts of 'wire fraud'" cannot "carry the day," *CBS*, 2017 WL 1957485, at *4. *Second*, Plaintiff alleges that Mr. Aaron emailed Mr. Stewart's articles to "personal and professional colleagues." Am. Compl. ¶ 122; Opp. at 14. But there is nothing wrongful, much less fraudulent, about Mr. Aaron emailing to friends and colleagues a publicly available *New York Times* article in which he was quoted, about a business his father founded. Nor is there any basis to attribute Mr. Aaron's conduct to Mr. Stewart. *See* ECF No. 42-6. *Third*, Plaintiff cites Mr. Stewart's alleged representation to Wine Caves clients that he, too, was a customer and that "his wine had been stolen from storage." Am. Compl. ¶ 105; Opp. at 14. But Plaintiff concedes Mr. Stewart was a customer, Opp. at 3, 15—and does not even address *Santana v. Adler*, cited in Mr. Stewart's opening brief, which holds that misrepresenting one's identity (which Mr. Stewart did not do) does not establish wire fraud. 2018 WL 2172699, at *5 (S.D.N.Y. Mar. 26, 2018), *report & recommendation adopted*, 2018 WL 2170299 (S.D.N.Y. May 10, 2018); *see* Mot. at 16. *Finally*, Plaintiff acknowledges that a RICO plaintiff must show the defendant intended to inflict economic harm on the victim, *United States v. Males*, 459 F.3d 154, 158–59 (2d Cir. 2006), and then points to the "good guy" release of guarantor liability in its lease agreement with other defendants, Opp. at 2, 13–14. But Mr. Stewart is not a guarantor and has no plausible basis to want Plaintiff—a business he patronized, Am. Compl. ¶ 95—to shutter.

Plaintiff fares no better in trying to meet RICO's requirement that a scheme must deprive a plaintiff of money or property. Plaintiff cites *Males* for the proposition that a "defendant does not need to literally 'obtain' money or property to violate the statute." 459 F.3d at 158. But *Males*

[6] Sherry-Lehmann also pleads generally that Mr. Stewart "largely ignored or brushed aside information which was provided by Sherry-Lehmann, Gilmer, Green, and Sherry-Lehmann representatives," without specifying what they would have said that would have contradicted any of his reporting. Am. Compl. ¶ 102; *see* Opp. at 14.

makes clear that the "defendant's scheme [must be] intended to deprive another of property rights, even if the defendant did not physically 'obtain' any money or property by taking it from the victim." *Id*. Plaintiff's far-fetched speculation that customers would have made future purchases and potential acquirers would have closed a deal but-for Mr. Stewart's reporting—notwithstanding the company's financial woes and the closure of its store—does not establish that Plaintiff lost money or property or that Mr. Stewart intended that result.

**2. Plaintiff Fails to Plead a Hobbs Act Violation**

Plaintiff's response to Mr. Stewart's arguments that it has not pled a Hobbs Act violation is even less plausible. *First*, as the cases cited by Mr. Stewart and ignored by Plaintiff make clear, the Hobbs Act requires a showing that "the victim part[ed] with his property, and that the extortionist gain[ed] possession of it." Mot. at 17 (quoting *Sekhar v. United States*, 570 U.S. 729, 734 (2013)). Plaintiff makes no effort to plead that Mr. Stewart gained possession of any of its property. Second, the Hobbs Act requires a "link between physical violence" and "robbery or extortion." Mot. at 17 (quoting *Scheidler v. Nat'l Org for Women, Inc.*, 547 U.S 9, 19 (2006)). Plaintiff's own case, *McLaughlin v. Anderson*, is entirely consistent with this rule, holding that threats to "bury you" amounted to extortion, while other non-violent acts did not. 962 F.2d 187, 194 (2d Cir. 1992). Plaintiff does not plead any link between physical violence and extortion here.

**C. Plaintiff Fails to Adequately Allege Proximate Cause**

Plaintiff offers little in response to Mr. Stewart's arguments that it has not pled, as it must, that any action by Mr. Stewart proximately caused it injury. Opp. at 16–18.

All that Plaintiff offers is the conclusory assertion that Mr. Stewart's alleged phone calls and his two articles were the "but-for cause of the government raids, the cancellation of numerous client contracts and orders, and the termination of acquisition discussions." Opp. at 17. But Plaintiff admits it was "struggling" and "not in top shape" *before* Mr. Stewart published his article.

Opp. at 5, 17; *see* Am. Compl. ¶¶ 10–11, 13, 46–47, 54, 56–57, 59, 62–63, 84.[7] As detailed in the *New York Post* and *Wine Spectator* articles that are incorporated by reference, *see* Mot. at 4 & n.3, Plaintiff had already issued checks to suppliers that bounced, got behind on 75 wholesaler invoices, faced lawsuits by customers to whom it owed hundreds of thousands of dollars in wine, was among New York's top "delinquent business taxpayers," was "facing potential financial ruin," and ultimately closed the doors of its flagship store. *See* ECF Nos. 42-1–42-4. That conceded factual record shows that it is not remotely plausible that Mr. Stewart's conduct proximately caused any meaningful financial harm.

## IV. PLAINTIFF FAILS TO STATE A RICO CONSPIRACY CLAIM

As set forth in Mr. Stewart's opening brief, the RICO conspiracy claim fails for three reasons: because the substantive RICO claim fails, because Plaintiff does not allege the necessary agreement to commit predicate acts, and because it cannot plead any injury proximately caused by the alleged conspiracy. In response, Plaintiff cites two cases, both of which Mr. Stewart already explained are inapposite. *See* Mot. at 21 n.8. Those cases involved defendants alleged to have transferred millions of dollars in proceeds from defrauded lenders and investors into their personal bank accounts, *Kriss v. Bayrock Grp., LLC*, 2016 WL 7046816, at *18 (S.D.N.Y. Dec. 2, 2016), *on reconsideration in part*, 2017 WL 1901966 (S.D.N.Y. May 8, 2017), and to have transported and sold cigarettes without NYC tax stamps as part of a cigarette bootlegging scheme, *City of New York v. Chavez*, 2012 WL 1022283, at *6–7 (S.D.N.Y. Mar. 26, 2012). In both cases, the success of some of the defendants "was dependent" on that of other defendants, demonstrating the

---

[7] Sherry-Lehmann perplexingly faults "the Moving Defendants" for failing to mention that "the business was still operating in the spring of 2021." Opp. at 2. But that is irrelevant; the question is whether it was still open and operating by the time Mr. Stewart published his first article in May 2023. Am. Compl. ¶¶ 113–116. It was not: the May 2023 article reported that "Sherry-Lehmann's Park Avenue store has been closed since March." ECF No. 42-7 at 4.

defendants' knowledge of, consent to, and participation in the conspiracy. Plaintiff makes no effort to explain in its opposition how the allegations here —which boil down to that Mr. Aaron and Mr. Yurch spoke to Mr. Stewart as he was writing his article—establish knowing participation in a conspiracy. *See, e.g.*, *Black v. Ganieva*, 619 F. Supp. 3d 309, 329 (S.D.N.Y. 2022), *aff'd*, 2023 WL 2317173 (2d Cir. Mar. 2, 2023).

## V. MR. STEWART SHOULD BE AWARDED ATTORNEYS' FEES

Plaintiff devotes a full three pages of its brief to arguing that it should not be required to pay fees. Opp. at 19–22. First, it argues that the anti-SLAPP law "does not contemplate an award of attorney's fees on a Rule 12(b)(6) dismissal." Opp. at 20 (quoting *Liang Wang v. Sussman*, 2025 WL 2607155, at *4 (S.D.N.Y. Sept. 9, 2025), *appeal filed*, No. 25-2487 (2d Cir. Oct. 8, 2025)). The *Wang* decision on fees is an anomaly with a result that cannot be squared with the text of the anti-SLAPP law and is currently on appeal to the Second Circuit. Instead, the balance of cases in this District support Mr. Stewart's position, and he respectfully submits that those decisions are faithful to the text of the anti-SLAPP statute and more consistent with *Erie* principles to boot. *See Bobulinski v. Tarlov*, 758 F. Supp. 3d 166, 186 (S.D.N.Y. 2024); *Heilbut v. Cassava Sciences, Inc.*, 778 F. Supp. 3d 551, 566–68 (S.D.N.Y. 2025); *Button v. N.Y. Times Co.*, 2025 WL 2643674, at *19–21 (S.D.N.Y. Sept. 15, 2025). Second, Plaintiff argues that a new pleading is required to seek fees. But the weight of authority holds that defendants may seek fees without needing to "file a separate action or counterclaim." *Bobulinski*, 758 F. Supp. 3d at 189 (collecting cases). And, in any event, upon a grant of Mr. Stewart's motion to dismiss, Mr. Stewart would be happy to file a motion for fees, justifying the fees accrued in defending against this baseless SLAPP suit.

## CONCLUSION

For the reasons set forth above, in Mr. Stewart's opening brief, and in Defendant Michael Aaron's briefs, the Amended Complaint should be dismissed with prejudice as to Mr. Stewart.

Dated: December 18, 2025

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

By: */s/ Katherine M. Bolger*

Katherine M. Bolger
Alexandra Perloff-Giles
1251 Avenue of the Americas, 21st Floor
New York, New York 10020-1104
Phone: (212) 489-8230
Fax: (212) 489-8340
katebolger@dwt.com
alexandraperloffgiles@dwt.com

*Counsel for Defendant James Stewart*