**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**SHERRY-LEHMANN, INC.,**

**Plaintiff,**

**-against-**

**STEWART ET AL,**

**Defendant.**

**25-cv-4427 (ALC)**

**OPINION & ORDER**

**ANDREW L. CARTER, JR., United States District Judge:**

Plaintiff Sherry-Lehmann d/b/a Sherry-Lehmann Wine & Spirits (hereafter, "Plaintiff") brings this action against Defendants James Stewart, Chris Adams, Michael Aaron, and Michael Yurch. Specifically against Stewart, Aaron and Yurch, Plaintiffs allege violations of the Racketeer Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c) and against Aaron for § 1962(d) and breach of contract. Defendants Stewart and Aaron (hereafter, "Defendants") now bring a motion to dismiss Plaintiff's claims pursuant to Fed. R. Civ. Pro. 12(b)(6).

This is a case concerning the now closed wine and spirits store, Sherry-Lehmann. Plaintiff Sherry-Lehmann alleges that former CEO Michael Aaron and other Defendants created a false press smear campaign with *The New York Times* reporter James Stewart to damage Sherry-Lehmann's reputation, violating federal RICO statutes. Sherry-Lehmann also alleges that Aaron and other Defendants breached separation agreements they had under which they were obligated to refrain from making disparaging comments about Sherry-Lehmann.

Sherry-Lehmann is unable to articulate one of the key elements of RICO, the alleged enterprise, that Defendants allegedly participated in. As for the state law breach of contract claim against Aaron, because the Court is dismissing the RICO claim, it will not address the breach of contract claim since the would decline the exercise of supplemental jurisdiction.

For the reasons stated in more detail below, Defendants' motions are GRANTED.

## I. **Factual History**

Founded in 1934, Plaintiff Sherry-Lehmann was a premiere wine and spirits store in New York City, with a "flagship retail store" at 505 Park Avenue. FAC ¶¶ 32, 35. Plaintiff also owned a wine storage business, Wine Caves, Inc. *Id.* ¶ 18. Defendant Michael Aaron, a Florida resident, is the son and nephew of the Sherry-Lehmann co-founders and served as Chairman and CEO of Sherry-Lehmann from 1989 to 2009. *Id.* ¶¶ 12, 28, 34. Defendant Chris Adams, a New York resident, joined Sherry-Lehmann in 1997, becoming a manager in 2002, a partner in 2005, and eventually CEO from 2009 to 2020. *Id.* ¶¶ 12 29, 44, 46. Defendant Michael Yurch, a Florida resident, previously served as President of Sherry-Lehmann from 1996 to 2013. *Id.* ¶¶ 12, 30, 42. Defendant James Stewart, a New York resident, is a "highly regarded business writer" at *The New York Times*. *Id.* ¶¶ 2, 19, 31.

At some point, Plaintiff began selling Bordeaux futures—i.e., selling wines to customers before they are bottled and released. *Id.* ¶¶ 45, 71. In recent years, Plaintiff suffered financial difficulties, and not only "was consistently in the red," from 2009 to 2020, but was "losing millions of dollars from the years 2016 through 2020." *Id.* ¶ 47. By approximately February 2020, "Sherry-Lehmann began defaulting under its payment obligations under the Lease." *Id.* ¶ 50. By September 2020, Sherry-Lehmann had accumulated approximately $3.2 million in outstanding New York sales tax liability, $650,000 in outstanding FedEx bills, and $729,673.32 in rent arrears. *Id.* ¶ 54. By 2022, Plaintiff was unable to satisfy wine futures orders, prompting two customers to file suit. *Id.* ¶ 71

On December 7, 2022, the *New York Post* published a lengthy article explaining that Plaintiff was "in danger of closing its doors" and ranked "ninth on the [New York] Department of

Taxation and Finance's list of the top 250 delinquent business taxpayers." Decl. of Katherine Bolger ("Bolger Decl."), Ex. A (Dec. 7, 2022 *New York Post* Article); *see* FAC. ¶ 71.3. The following week, on December 15, 2022, the Post published a follow-up article, reiterating that Plaintiff was "in danger of closing its doors as it has racked up a $3.1 million sales tax bill to New York state," as well as "arrears with suppliers and clients alike," and that "angry customers claim that they're not getting the deliveries they paid for." FAC. ¶ 76; Bolger Decl. Ex. B (Dec. 15, 2022 *New York Post* Article). Plaintiff alleges that Defendant Aaron provided the *New York Post* reporter Lisa Fickenscher with information for the article. FAC ¶ ¶ 76-77.

On January 5, 2023, *Wine Spectator* published an article reporting that "Sherry-Lehmann is facing potential financial ruin." *Id.* ¶ 84; *see* Bolger Decl. Ex. C (Jan. 5, 2023 *Wine Spectator* article). That was followed by a second article, on March 17, 2023, reporting on the closure of Plaintiff. FAC ¶ 86; *see* Bolger Decl. Ex. D (March 17, 2023 *Wine Spectator* article). The March 2023 article stated that "the 89-year-old retailer . . . has been grappling with unpaid bills, unpaid taxes, inventory issues and lawsuits from angry customers," and that "[t]he closure was only the latest of a cascade of troubles that have beset the store," including "tax issues," "inventory problems because suppliers say it has not been paying its bills," and the departure of "[s]everal key employees," who were "unhappy over bounced paychecks or business practices they could not countenance." *Id.* On June 13, 2023, *Wine Spectator* published a third article, reporting that Plaintiff had accrued $3.6 million in rent arrears and its landlord was threatening eviction. FAC. ¶ 88; *see* Bolger Decl. Ex. E (June 13, 2023 *Wine Spectator* Article).

Around this time, Defendant Stewart also began reporting on Plaintiff's financial issues for *The New York Times*. He contacted Plaintiff's co-CEO, Shyda Gilmer, to explain that he intended to write about Sherry-Lehmann, FAC ¶ 92, and then met with Mr. Gilmer and another Sherry-

Lehmann representative to ask them questions and hear their perspective. *Id.* ¶ 93. During that April 18, 2023 meeting, Stewart and Gilmer discussed the fact that Stewart had purchased wine through Sherry-Lehmann that had not yet been delivered. *Id.* ¶ 96. When Gilmer offered to have the wine delivered, Stewart said "Don't deliver it, don't do me any special favors," *Id.* Stewart followed up after the meeting with a list of questions to Sherry-Lehmann and its representatives. *Id.* ¶ 99.

Between April 2023 and July 2023, Stewart allegedly "contacted Wine Caves customers claiming that his wine had been stolen from storage, and that other Wine Caves customer wines had been stolen as well." *Id.* ¶ 105. In addition to Sherry-Lehmann representatives and customers, he also spoke to suppliers, former Sherry-Lehmann employees—and even a Sherry-Lehmann delivery person. *Id.* ¶¶ 105, 110.

On May 25, 2023, *The New York Times* published an article by Stewart, quoting Gilmer, Defendant Adams, Defendant Aaron, as well as a number of other sources. *Id.* ¶¶ 113–116; *see* Bolger Decl. Ex. F. The article reported that, "according to a person who reviewed the company's financial statements," Sherry-Lehmann's "[a]nnual revenue plunged by more than half to $15 million in 2020," though the company "disputed those figures without providing what [it] said were accurate numbers." FAC ¶ 114. In the article, Stewart discussed at length that he was himself a customer whose wine had not been delivered. *See* Bolger Decl. Ex. F. On June 16, 2023, Stewart published a follow-up article titled "Famed Wine Store Sherry-Lehmann Faces Criminal Investigation." FAC ¶ 127; *see* Bolger Decl. Ex. G. The article reported that the Justice Department had convened a federal grand jury after customers complained of missing wine and was conducting an investigation in collaboration with the Postal Service and the New York Police Department. *Id.*

Plaintiff also alleges that Defendant Aaron was quoted in a *New York Post* article dated July 25, 2023, which stated: (i) "Aaron, who sold his ownership stake back to the company in 2008, maintained that the grapes went sour 'almost from the day I retired in 2008. They started reinventing the wheel and changing the whole philosophy of a company that had been successful for 75 years'"; (ii) "Two days after I [Aaron] left, the owner of a very large distributor phoned me and said that calls were not being returned"; and (iii) "For the last 15 years what went on makes no sense to me. I [Aaron] resigned from the board in 2014 out of frustration." FAC ¶¶ 132-133, 135.

In July 2023, the U.S. Attorney's Office directed Postal Inspectors to raid both Plaintiff's retail location and the Wine Caves facility. *Id.* ¶ 18. The raid lasted multiple days, with as many as 200 agents at Wine Caves. *Id.* ¶¶ 129–130. It was followed by "a subsequent raid in May 2024." *Id.* ¶ 130. Plaintiff alleges, "as a result of the July 2023 raid and the published articles" across the various outlets, customers cancelled orders and "multiple third parties . . . backed out of acquisition discussions," including "one of the largest vineyard owners in France," which had allegedly been considering acquiring the company. FAC ¶¶ 8, 20, 136.

Plaintiff alleges that out of concern that they would be liable for overdue rent payments, Defendants Aaron and Yurch worked with Defendant Stewart to "concoct sensational press to damage Sherry-Lehmann's business reputation" and force Sherry-Lehmann's closure. FAC ¶¶ 68-69, 160-161. Plaintiff further alleges that Aaron, Yurch and Stewart's "press smear campaign" caused the loss of business and property value in excess of $20 million. *Id.* ¶¶ 20, 136, 165. Specifically, Plaintiff alleges that press articles by Stewart and others resulted the United States Postal Inspection Service ("Postal Inspectors") raiding Wine Caves in July 2023, and Sherry-Lehmann's 505 Park Avenue location in May 2024. *Id.* ¶¶ 4, 18, 129-131, 145-146. Plaintiff

alleges it also lost potential acquisition and merger opportunities valued at least $20 million, customers cancelled orders, and suppliers refused to deliver wine because of the publications and raids. *Id.* ¶¶ 20, 67, 137, 145, 151-152, 154. Plaintiff alleges its reputation has also suffered damage. *Id*. ¶¶ 9, 124, 147, 154.

**I. Procedural History**

On May 27, 2025, Plaintiff filed a complaint. ECF No. 1. On October 17, 2025, Plaintiff filed an amended complaint ("FAC"). ECF No. 38. On November 13, 2025, Defendants Stewart and Aaron filed motions to dismiss the FAC. ECF Nos. 40 and 43. On December 11, 2025, Plaintiff filed its Opposition. ECF No. 45. On December 18, 2025, Defendants filed their Replies. ECF Nos. 46 and 47.

## LEGAL STANDARD

When resolving a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in Plaintiffs' favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks and citations omitted). Thus, "[t]o survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). However, the court need not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985).

## DISCUSSION

I. Plaintiff's Claim Against Defendant James Stewart

A. RICO

1. The RICO claim is not time-barred.

Defendant Stewart argues that Plaintiff's RICO claim should be dismissed as time-barred because it sounds in defamation, so the one-year statute of limitations for defamation should apply. Defendant Stewart's Motion to Dismiss ("Stewart MTD") at 8. However, the various cases Stewart cites in support of dismissing the claims on statute of limitations grounds do not involve federal claims, but rather state claims. *See, e.g., Button v. N.Y. Times Co.*, 2025 WL 2643674, (S.D.N.Y. Sept. 15, 2025) (finding that state claims sounded in defamation). While the RICO statute does not specify a statute of limitations period, courts have consistently found that the period is four years. *See Evercare Choice Inc. v. PKF O'Connor Davies, LLP*, 2026 WL 1284171 (S.D.N.Y., 2026), at *6 (citing to *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 361 (2d Cir. 2013)). Therefore, this Court does not find it appropriate to apply state law statute of limitations to a federal claim that has its own statute of limitations. Here, because the allegations occurred after 2021, the RICO claim is within the statute of limitations period.

Since the Court dismisses for failure to plead an enterprise, the Court will not decide the motion on First Amendment grounds.

2. The RICO claim against Stewart is dismissed because there was no enterprise.

In order to plead a civil RICO claim, a plaintiff must allege it "was injured by defendants' (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Kalimantano GmbH v. Motion in Time, Inc.*, 939 F. Supp. 2d 392, 404 (S.D.N.Y. 2013). Racketeering activity can include predicate acts of wire fraud and the Hobbs Act (18 U.S.C. §

1951), as is alleged here. FAC ¶¶ 138, 139. Wire or mail fraud requires "(i) a scheme to defraud (ii) to get money or property, (iii) furthered by the use of interstate mail or wires," *BWP Media USA Inc. v. Hollywood Fan Sites, LLC*, 69 F. Supp. 3d 342, 362 (S.D.N.Y. 2014), and must be pled with particularity under Rule 9(b), *see, e.g.*, *McLaughlin v. Anderson*, 962 F.2d 187, 191 (2d Cir. 1992). The Hobbs Act requires robbery or extortion affecting interstate or foreign commerce. *See* 18 U.S.C. § 1951(a). In addition to pleading a Section 1962 violation, a civil RICO plaintiff must also plead "injury to the plaintiff's business or property" and "causation of the injury by the defendant's violation." *Com. Cleaning Servs., L.L.C. v. Colin Serv. Sys., Inc.*, 271 F.3d 374, 380 (2d Cir. 2001).

Plaintiff's RICO claim against Defendant Stewart fails as a matter of law because there was no enterprise. A plaintiff bringing a RICO claim under 18 U.S.C. § 1962(c) must show "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains [an] interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." *Williams v. Affinion Grp., LLC*, 889 F.3d 116, 123–24 (2d Cir. 2018) (*quoting Moss v. Morgan Stanley, Inc*., 719 F.2d 5, 17 (2d Cir. 1983)). An enterprise requires "an ongoing organization" that "must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Zamora v. Fit Int'l Grp. Corp.*, 834 F. App'x 622, 625 (2d Cir. 2020) (citations omitted).

Defendants argue that the common purpose requirement is not satisfied. "Individuals must share a common purpose to engage in a particular fraudulent course of conduct and work together to achieve such purposes." *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 120 (2d Cir.

2013) (citation omitted). Here, Plaintiff alleges different intents for the various defendants' actions. For example, Aaron wanted to allegedly put Plaintiff out of business to avoid payment of the company's rent obligations; Yurch wanted to depreciate the value of the company so he could buy it for cheap, and Stewart was looking "to attempt to garner a Pulitzer Prize." AC ¶¶ 2, 7, 16, 159-161. Courts do not allow for individual intentions to constitute a common purpose. *See D. Penguin Bros. Ltd. v. City National Bank*, 587 F. App'x 663, 668 (2d Cir. 2014) (holding that "individual self-interests" do not amount to a "common purpose" under RICO). In its Opposition, Plaintiff argues that the Defendants "engaged in a common purpose of publishing a series of articles about Sherry-Lehmann." Pl. Opp. at 11. However, these allegations are not pleaded in the FAC. Therefore, the Court finds that no common purpose was pleaded, so there is no enterprise. Because there is no enterprise, Defendant Steart's RICO claim is dismissed.

II. Plaintiff's Claims Against Defendant Michael Aaron

A. RICO

Plaintiff's RICO claim against Defendant Aaron fails as a matter of law because there was no enterprise for the reasons stated in I.A.3. Because there is no enterprise, Defendant Aaron's RICO claim is dismissed.

B. Breach of Contract

Plaintiff also alleges that Defendant Aaron breached a separation agreement. "[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *Castellano v. Bd. of Trustees*, 937 F.2d 752, 758 (2d Cir.1991) (internal quotation marks omitted). "Moreover, the discretion implicit in the word 'may' in subdivision (c) of [28 U.S.C.] § 1367 permits the district court to weigh and balance several factors, including considerations of judicial economy, convenience, and fairness to

litigants." *Purgess v. Sharrock*, 33 F.3d 134, 138 (2d Cir.1994). To conserve resources, the Court is declining to exercise supplemental jurisdiction over the breach of contract claim against Aaron.

**CONCLUSION**

For the foregoing reasons, Defendants' motions are GRANTED. The RICO claims against Stewart and Aaron are dismissed without prejudice. Plaintiff is granted leave to amend.

Plaintiff's lawyer's request to withdraw is GRANTED. Plaintiff has thirty days to get new counsel. Plaintiff is reminded that because it is a corporation, it cannot proceed *pro se*. If Plaintiff wishes to amend, Plaintiff must file an amended complaint within 21 days of new counsel filing a notice of appearance. The Clerk of Court is respectfully directed to terminate all pending motions.

**Dated: September 29, 2026**
**New York, New York**

**SO ORDERED.**

Andrew L Carter Jr

**ANDREW L. CARTER, JR.**
**United States District Judge**